## BENJAMIN L. SIMPSON v. WITTE IRON WORKS COMPANY, Appellant.

**In Banc, April 8, 1913.**

1. **FACTORY ACT: Constitutionality: Notice.** The court in holding in the case of Williams v. Railroad, 233 Mo. l. c. 680, that section 20 of the Factory Act, Laws 1891, p. 162, now Sec. 7844, R. S. 1909, pertaining to railroad platforms, passageways and other structures in railroad yards, was unconstitutional in that the subject-matter of that section was not clearly expressed in the title of the act, did not hold that Sec. 7828, R. S. 1909, was invalid, nor was its validity held in judgment in that case; and the observations of the court in that case to the effect that no civil action could be brought under that section even if valid, unless the prior notice required by section 16 of said act, now Sec. 7844, R. S. 1909, had been given by the factory inspector of the unsafe condition of the platform, passageways, etc., to those in charge of the place, were *obiter dicta* and therefore in no sense *res adjudicata*.

2. ————: **Violation Negligence Per Se.** Section 7828, R. S. 1909, declaring that "the belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabouts while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishment," imposes a positive duty upon the employer to do two things: first, to provide safe and secure guards when possible for motion and power machines "when so placed as to be dangerous to employees;" and, second, if that is not possible, to conspicuously post a danger signal as a warning to employees. If these duties are obeyed, the employer is not liable for injuries occasioned by such agencies to his employees; if they are not obeyed, then the employer's disobedience is an act of negligence *per se*, and he is responsible for all injuries directly caused by such failure, except such as are due to the employer's contributory negligence; and the employer's negligence exists prior to and independently of any notice to him by the factory inspector to make alterations necessary for the health and safety of the employees.

3. ————: ————: **Prior Notice from Factory Inspector.** The liability of the factory employer to his injured employee for failure to guard his machinery or to post a conspicuous notice of danger, is not dependent upon a prior inspection by the factory inspector and a notice from him to the employer to make

alterations necessary to the safety and health of the employees, as required by Sec. 7842, R. S. 1909. The employer's failure to comply with the requirements of the inspector would be a new and independent violation of the Factory Act, but that section is merely an additional safeguard provided for the employee, and does not affect his right to recover for damages for injuries due to the employer's failure to comply with the duties imposed by Sec. 7828.

4. ————: **Purpose of Statute: Idle Belt in Aisle.** The Statute (Sec. 7828, R. S. 1909) requiring the belting, gearing, etc., of machinery and machines in factories to be safely and securely guarded, conditioned that duty upon the words "when so placed as to be dangerous to persons employed therein or thereabouts while engaged in their ordinary duties," and means that the belting should be guarded when its normal operation would injure an employee who should approach near enough to be caught by its force. It does not apply where the employer placed partly across an aisle ten feet wide an electric motor carrying a belt, but leaving a space of about three feet of aisle not occupied by the motor or belt, and an employee, upon entering the factory and proceeding to the place of register, tripped over the unguarded belt, which was not in motion and was eighteen or twenty inches above the floor, and was injured by the fall.

*Held*, by LAMM, C. J., dissenting, with whom WOODSON and BROWN, JJ., concur, that the scope of the statute should not be narrowed to dangerous and unguarded machinery and belting while in motion, since the statute says nothing about motion and the courts have no right to read such an exception into it.

*Held*, also, that the danger of an unguarded belt, stretched in the uncertain light of a winter's morning across the pathway customarily used, with the employer's knowledge, by the employees as they went to the register clock to register-in, its presence there being unknown to them, comes within the purview of the statute, since the act of registering-in was one of their ordinary duties, and the fact that the belt was not in motion at the instant was a mere incident of its use, and no device more cunningly calculated to trip and injure a footman could be well imagined than a flexible belt stretched close to the floor.

*Held*, also, that the proposition that an employer would have no reasonable ground to anticipate that an employee would come in contact with a belt stretched in that way, does not commend itself.

*Held*, also, that the jury were as capable as this court of deciding whether the presence of the belt was the proximate cause of plaintiff's injury.

5. ————: Constitutionality: Void in One Section: Valid as to
Others. The holding in Williams v. Railroad, 233 Mo. l. c. 680,
that the section of the Factory Act relating to railroads was
unconstitutional because that section was not embraced in the
title to the act, did not affect the validity of the independent
section relating to guarding machinery in factories. Where
one section of a statute can subsist in unimpaired vigor after
the destruction of another, they are not interdependent, but
independent, and the unconstitutionality of the one does not
affect the validity of the other. The section relating to the
duty to guard belting, gearing, etc., of machines and machinery
in factories is embraced in the title of the act, and is consti-
tutional.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

REVERSED.

*Pierre R. Porter* for appellant.

(1)   There can be no violation of the belt guard-
ing statute until after notice by the factory inspector.
R. S. 1899, sec. 6446; Williams v. Railroad, 233 Mo.
682; Foley v. Machine Works, 149 Mass. 297; Borck
v. Bolt & Nut Co., 111 Mich. 133; Kerr v. Brass Mfg.
Co., 155 Mich. 191.   (2)   Even before the Williams
decision the Missouri courts held that in order to prove
statutory negligence in failing to guard a belt, it must
be affirmatively shown that the defendant had reason-
able ground to anticipate injury to employees, either
in the course of its regular movements or by an irreg-
ular movement due to bad repair or bad handling.
Strode v. Box Co., 124 Mo. App. 523.   (3)   The guard-
ing statute has no application to this accident because:
(a)   The belt was stationary.   The cause of the acci-
dent was plaintiff's act of stumbling over the belt.
The belt produced the fall not in its capacity as an
unguarded belt, but as an inanimate object, for which
there is a common law remedy.   (b)   There was no
reasonable ground to anticipate that plaintiff would

come in contact with it while in the performance of his ordinary duties. (c) Plaintiff's own testimony showed that the belt was not so located as to be dangerous to him in his ordinary duty because he was not required to pass over the space occupied by it, but could have gone safely through the three-foot passageway to the east of the belt, or down the main aisle. Under such a state of facts there was no duty to guard. Lang v. Bolt & Nut Co., 131 Mo. App. 146; Strode v. Box Co., 124 Mo. App. 511; Powalske v. Brick Co., 110 Wis. 461; Wynkoop v. Mfg. Co., 30 L. R. A. (N. S.) 40, 196 N. Y. 324; Stodden v. Anderson & Winter Mfg. Co., 16 L. R. A. (N. S.) 614; Meifert v. Sand Co., 124 Mo. App. 491; Cement Co. v. Ins. Co., 162 N. Y. 403; Robbins v. Fort Wayne Co., 41 Ind. App. 557. (4) The failure to guard did not in any way contribute to the cause of the accident. (a) In determining whether an act is the proximate cause of the injury, the legal test is: Was the injury of such a character that it might have been foreseen or expected as a natural result of the act complained of? Words and Phrases—Proximate Cause, 5764; Neuman v. Railroad, 20 Iowa, 672; Railroad v. Rowland, 38 S. W. (Tex.) 756; Holwerson v. Railroad, 157 Mo. 216; 2 Labatt, Master & Servant, p. 2243. (b) It could not be reasonably expected that he would stumble over this belt in broad day light. Therefore there was no duty to guard against the occurrence of such an accident in broad day light. (c) Nor was there any duty to guard in an unusual condition of darkness. (d) The sole contributory cause of the accident (eliminating his own carelessness) was the darkness and not the failure to guard. He would have stumbled over a guard and received the same injury, while but for this alleged darkness he would not have received any injury at all if he had been in the exercise of due care. (5) Plaintiff did not bring his case within the statute. He failed to prove that it was "possible" or "reasonably practicable" to guard the

belt. R. S. 1899, sec. 6433; R. S. 1909, sec. 7828; Huss v. Bakery Co., 210 Mo. 44; Henschell v. Railroad, 78 Kan. 415; Carriage Co. v. Sullender, 165 Ind. 303.

*James G. Smart* and *Charles R. Pence* for re- spondent.

(1) Sec. 7828, R. S. 1909, does not require no- tice by the inspector to the factory owner and a failure by the owner to construct guards after such notice. It is complete within and of itself and prescribes the duty which the defendant failed to perform. This is not a criminal prosecution to recover the penalty pre- scribed in section 7846. Rose v. King, 15 L. R. A. 160; Willy v. Mulledy, 78 N. Y. 313; Lore v. American Mfg. Co., 160 Mo. 608; Collins v. Paper Co., 143 Mo. App. 333. The Supreme Court did not intend in its *dictum* expressed in Williams v. Railroad, 233 Mo. 666, to overrule the cases cited below in which it was held that the factory owner was guilty of negligence *per se* if he fails to construct the guard as required by section 7828. In none of these cases was notice by the inspector to the owner either pleaded or proven. Lore v. American Mfg. Co., 160 Mo. 608; Millsop v. Biggs, 122 Mo. App. 6; Stafford v. Adams, 113 Mo. App. 721; Collins v. Paper Co., 143 Mo. App. 333; Bair v. Heibel, 103 Mo. App. 634; Colliott v. American Mfg. Co., 71 Mo. App. 171. Section 20 of Act of 1891, in reference to railroads, was held unconstitutional by the Supreme Court in Williams v. Railroad, and the comments in reference to the construction of this unconstitutional law are mere *dictum* and do not have the force of an adjudication. The comments are applicable alone to section 20 and not to section 3. The petition was not faulty for failure to allege directly either actual or con- structive knowledge by defendant of the danger from the belt. Its allegations were equivalent to an allega- tion of such knowledge. Young v. Schickle, 103 Mo. 328; Hall v. Railroad, 74 Mo. 322; Crane v. Railroad, 87 Mo.

594; Tateman v. Railroad, 96 Mo. App. 448. (2) Counsel
for defendant complains that the court erred in over-
ruling defendant's demurrer to the evidence for the
reason that the statute is not applicable to machinery
not in motion. The statute does not say so. Its words
are general, simply to the effect that the belting, etc.,
if so placed as to be dangerous shall be guarded. Some
machinery may be as dangerous at rest as in motion;
other machinery because of its slow motion is not
made more dangerous thereby. The Legislature did
not see fit to limit the meaning which it could have
done by the mere words ''while in motion.'' Nor is
it the province of the court to interpolate these words.
Henderson v. Kansas City, 177 Mo. 493; Bair v. Hei-
bel, 103 Mo. App. 634; Lore v. Mfg. Co., 160 Mo. 608;
Strode v. Box Co., 124 Mo. App. 516; Colliott v. Mfg.
Co., 71 Mo. App. 171. (3) Another reason assigned
by counsel was that there was no reasonable ground to
anticipate that plaintiff would come in contact with it
in the performance of his ordinary duties. This exact
question was submitted to the jury by the defendant's
instructions. There was abundant evidence to sup-
port the verdict in this respect. (4) Another reason
assigned by counsel for defendant is that plaintiff was
not required to pass over the space occupied by the
belt, but could have gone in another way. The evi-
dence overwhelmingly shows that the way plaintiff
went was customarily or ordinarily used by the em-
ployees. Surely no fault can be attributed to plaintiff
for not using some other way. (5) Counsel for de-
fendant complains that the failure to guard was not
the proximate cause. If the belt had been safely and
securely guarded he would not have fallen. It was
not guarded and he did fall. Lore v. Mfg. Co., 160 Mo.
608. The evidence is that the place was dark and the
employees were required to begin their work at 7
o'clock in the morning before the sun was up. The
defendant knew this. A reasonably prudent person

would anticipate just such an injury as plaintiff received.

## STATEMENT BY THE COURT.

This suit is for personal injuries sustained by plaintiff while in the employment of defendant, a manufacturer of gas and gasoline engines in Kansas City, Missouri. For his cause of action, plaintiff alleges that he arrived at the factory to begin his day's work about seven o'clock on November 16, 1909; that while passing through an aisle on his way to a clock where the workmen were required to register, he was tripped by a belt which was lying in the aisle and was thrown to the floor and permanently injured; that his injuries were caused from the failure of defendant to comply with the provisions of the statutes of Missouri requiring the guarding of machinery when so placed as to be dangerous to employees. He asks judgment for $7500 damages.

The defendant's answer contained a general denial, a plea of contributory negligence, and assumption of risk.

There was evidence tending to show that the plaintiff was an experienced pattern-maker; that it was his duty to pass through a room adjoining the one in which his work was done, for the purpose of registering at a time clock provided by defendant to be used by its employees to record the time of beginning and ceasing their work; that this clock had been recently moved from its former location about sixty-five feet southwardly and on the day in question stood on the east side of an aisle or passageway about ten feet wide, partly across which defendant placed an electric motor carrying a belt but leaving a space of about three feet of aisle not occupied by the motor or belt; that on the morning on which plaintiff was injured he was late on reaching the factory, getting there a little after

seven o'clock, at which hour all of defendant's employees were required to be at their work; that he first entered a store room provided for the clothing of employees, and walked through the aisle wherein the motor stood to the clock and register; that there was another aisle west of the one used by plaintiff and known as the main aisle, leading to the clock, which was used by employees in going to register and which presented a safe passageway.    The one chosen by plaintiff was shorter.   There was evidence tending to show that the room was ill lighted at that hour of the morning; that the belt over which plaintiff tripped was unguarded and not in use at the time; that the upper rim of the belt stood about eighteen or twenty inches above the floor.   Plaintiff testified that he did not see the belt until he fell over it.   He admitted on cross-examination that he was not looking for the belt but had his head turned in a direction to see the clock; that after he fell he looked behind and saw that he had been tripped by the belt, that he could have seen it if he had been looking for it.   Defendant adduced evidence tending to show that the injuries to plaintiff were caused by his failure to use the other or main aisle leading from the locker to the clock, and by his negligent failure to look out for the belt on the aisle which he did use.

Plaintiff had judgment for $3750, from which defendant appealed to the Kansas City Court of Appeals.    That court transferred the case to this court upon the theory that a question as to the constitutionality of the statute upon which this action is based is involved under the ruling of this court in Williams v. Railroad, 233 Mo. 666.   When the case came here it was assigned to Division One.    The judges of that division being equally divided in opinion, the cause was sent to Banc.

The errors assigned are, that the petition states no cause of action, the refusal of the court to sustain

a demurrer to the evidence, and its exclusion of the certificate of the factory inspector, dated November 17, 1909, and also his oral testimony relating to his inspection.

## OPINION.

BOND, J. (after stating the facts as above).— One section of the Factory Act was reviewed and held to be void because its subject-matter was not clearly expressed in the title of the act as prescribed by the Constitution. [Constitution of Missouri, art, 4, sec. 28; Williams ·v. Railroad, 233 Mo. 1. c. 680.] The particular section of the Factory Act then in judgment was the one referring exclusively to the railroad platforms, passageways and other structures on their yards and grounds. It was known as section 20 of the Laws of 1891, p. 162, and is now found in the Revised Statutes of 1909, section 7844.

The body and substance of the original Factory Act, with slight alterations, is contained in the present revision [R. S. 1909, secs. 7827 to 7852 inclusive.] This court in the Williams case, supra, after disposing of the matter then in judgment by deciding that the plaintiff who had grounded her action upon the aforesaid section of the Factory Act, could not recover because "an unconstitutional act is no law at all," proceeded to make some observations as to the applicability of another section of the Factory Act defining the duties of the Factory Inspector (Laws 1891, p. 161, sec. 16; R. S. 1909, sec. 7842) to the one held in judgment (Laws 1891, p. 162, sec. 20; R. S. 1909, sec. 7844), and intimated that no civil action could be brought for injuries under the section sued upon even if valid, unless a prior notice had been given by the inspector of the unsafe condition of the platforms, passageways and other structures in and about the railroad yard to the persons in charge of the place.

These remarks of the court were abstract from the matter in judgment, for that had been completely disposed of by the previous correct decision annulling the statute upon which plaintiff's cause of action rested. They appertained to a supposable case and are not authoritative nor binding on us. The point not then before the court has now arisen and demands judgment in the case at bar. It grows out cf the existence of the section of the statute making it the duty of the factory inspector or his assistant to ascertain all matters of danger to the "health or safety" of employees and to notify the person in charge of the factory or place to make necessary "alterations or additions" to obviate the reported dangers. That section concludes, to-wit: "The factory inspector or assistant inspector shall at once notify the person or persons in charge of such establishment or place to make the alterations or additions necessary within thirty days; and if such alterations or additions be not made within thirty days from the date of such notice, or within such time as said alterations could be made with proper diligence, then such failure to make such alterations shall be deemed a violation of this article." [R. S. 1909, sec. 7842; Laws 1891, p. 161, sec. 16.] The section on which plaintiff's suit is founded is, to-wit: "The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments." [R. S. 1909, sec. 7828.] To determine the relation of these two provisions, regard must be had to their respective terms and purposes and also to the language, and general intent of the Legislature in

the enactment of the entire Factory Act. The particular section in judgment in this case imposes a positive duty on the part of the employer to do two things: (1) To provide safe and secure guards when possible for certain agencies of motion and power *"when so placed as to be dangerous"* to employees; (2) If that is not possible, then to post a danger signal as a warning to employees. [Huss v. Bakery Co., 210 Mo. l. c. 51, 52.] If these statutory directions are obeyed, then the employer is not liable for injuries occasioned by such agencies to such employees. If they are not obeyed, then the employer's disobedience is an act of negligence, and he is responsible for any and all injuries directly caused by such failure, saving the defense of contributory negligence. [Lore v. American Manufacturing Co., 160 Mo. 608; Millsap v. Beggs, 122 Mo. App. l. c. 5 and 6.] The responsibility of the employer arises in such cases not only to the injured employee but to the State, for other sections of the act make his disobedience of *any* of its provisions (including the one under review) a misdemeanor punishable to the extent provided in such sections. [R. S. 1909, secs. 7846 to 7851 inclusive.] This double liability is imposed by the general tenor of the act and relates to every requirement contained in any provision of any valid section of the Factory Act. [R. S. 1909, secs. 7846 and 7847.]

If the employer is guilty of negligence *per se* in violating the statute imposing personal duties on him, as is the law, then his negligence exists *prior* and independently of the report thereof by the inspector. The report of the inspector, if it should relate to the peculiar duties imposed by the statute under review, would only serve to call to the attention of the employer his own disobedience of the mandate of that section and require him to do the very things previously demanded and which he had neglected to perform, thereby violating a specific duty

and committing a misdemeanor under other sections
of the statute. [R. S. 1909, secs. 7846 and 7847.] And
while it is true that his failure to comply with the re-
quirements of the inspector would be a new and inde-
pendent violation of the Factory Act, yet this second
offense could not in reason relieve him from the con-
sequences of the former. To rule otherwise would
exempt the employer from liability, unless his omis-
sion to conform to the specific requirements of the sec-
tion under review—although directly causing injury
to one of his employees—is subsequently ascertained
and reported to him by the factory inspector. Such a
construction cannot be maintained on any logical
ground and if adopted would not only emasculate
the beneficent purposes of the section under review to
afford greater security to the employee, but would
leave him in a worse condition than at common law.
For under that rule the employer would be liable to
an employee injured by being put to work at a place
not reasonably safe, while under the statute requir-
ing specific precautions he would not be liable for
omitting these, unless informed of his negligence by
a third party. The independence of these two sec-
tions is a necessary conclusion from the considera-
tion of their respective language and terms. It is
apparent on the face of the section relating to the
duties of inspectors (R. S. 1909, sec. 7842), that its
object was not to affect the obligation of the employer
to comply with any other provisions of the Factory
Act, but that it was solely designed to empower the in-
spector therein named to ascertain whether the
"health or safety" of the employees was imperiled,
either by the failure of the employer to comply with
specific duties imposed on him in other sections of the
act, or by any of the other matters referred to in the
inspection section. After he has made the investiga-
tion prescribed, it is the duty of the factory inspector
(in case he finds a condition existing deleterious to

the employees) to require the employer to make "alterations and additions" necessary and remedy such condition within thirty days or by "reasonable diligence," and the failure of the employer to comply with these requirements is a separate and distinct "violation of this article." The evident purpose of this section was to enlarge the protection of employees afforded by other sections of the Factory Act, by making the continued neglect of his statutory duties by the employer an additional violation of the Factory Act affording in proper cases a basis for civil or criminal liability. It is, therefore, simply supplementary to other sections of the act, including the one on which plaintiff's suit is based, and is in furtherance of the general purposes and scope of the Factory Act. The only relation of the inspection section to the one under review is to give it greater efficiency by adding to the previous duty of the employer the secondary duty of remedying his neglect under penalty as of a second violation of the statute. We, therefore, hold that the inspection section of the act is merely an additional safeguard provided for the employee, and that it does not either in letter or spirit affect his right to redress for the failure of the employer to provide for other safeguards provided by other sections of the Factory Act. And we further hold, that an injury to an employee caused by failure to guard machinery as prescribed in the section under review in this case is negligence *per se* and actionable independent of any notice of the factory inspector in the performance of his duties under the section relating thereto.

II. The decisive question in this case is, under what circumstances does the duty of the employer to guard the belting, shafting, etc., referred to in the section, supra, arise? Obviously, this must be determined by the language of the section as affected by the

scope and object of the entire act, of which it is a subsidiary part. An inspection of the language of the section, supra, shows that the duties imposed by it upon employers with reference to the use of certain machinery are predicated upon the following language: "When so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties." This phrase indicates that the Legislature had the rational motive of warding off the danger likely to occur from the location of certain agencies of power and motion, whose operation is necessary to the business of the employer, by requiring him to guard against the danger arising from their use to employees working about the place where they are situated. The Legislature comprehended that such engines would only be placed in a factory for the purpose for which they are made and designed, and that when so used they would, unless securely guarded, injure any employee who might come into contact with them. The Legislature also knew that the belting, shafting, etc., mentioned in this section have no intrinsic power to injure, such as is had by machinery containing on its outside spikes, saws or other things likely to hurt any one who should fall upon and against them, and therefore had no greater potentiality to inflict injury than any other furniture unless they are put to their proper uses as the originators or conduits of motion and power. We think, therefore, that the lawmakers in conditioning the duty to guard upon the phrase above quoted meant thereby that it should attach when the "belting," etc., should be so placed in a factory that its normal operation would injure any employee who should approach near enough to be caught by its force or subjected to its activity. Such accidents are likely to happen to employees who are engrossed in work near such machines unless they are protected from the workings of the machinery by safe

and secure guards. This thought is expressed with clearness, force and completeness by WOODSON, J., in the dissenting opinion of Huss v. Bakery Co., 210 Mo. l. c. 67 and 68, to-wit: "The Legislature knew that the human mind and conduct were such that a servant when in the performance of his duties to his master, surrounded by dangerous machinery, in motion, with his mind concentrated upon his work, oblivious to his surroundings, is liable to slip or take a misstep and fall into the revolving machinery, or thoughtlessly thrust his hand or other portion of his body into the gearing or other portion of the machinery; and if not 'safely and securely guarded' he would in consequence thereof receive injuries of a serious character."

In the case at bar the belting over which plaintiff stumbled occupied two-thirds of the width of the passageway. It was in a state of absolute inertia and had no greater power to inflict injury on him than would have happened if he had stumbled over or against a guard rail of equal height—eighteen or twenty inches. These facts demonstrate that a railing around it would have been no less injurious to a man walking across it with his head turned in another direction— as the proof shows was the case—than the idle belt.

We do not think that the section under review imposed any duty upon defendant to surround this belt with a railing or other guard under the circumstances attending its presence in the aisle at the time plaintiff was injured, and that no cause of action arose in plaintiff's favor under the section of the statute, supra, upon which his suit is based.

In view of this conclusion, it is unnecessary for us to pass upon the assignment of error as to the alleged contributory negligence of plaintiff.

III. The only point that need be further noticed in this case is whether or not the correct ad-

judication in Williams v. Railroad, supra, that the provision relating to railroad structures was unconstitutional and void, affected the section of the article under review in this case. The rule on that subject is this: If one section of a statute can subsist in unimpaired vigor and efficiency after the destruction of another, then they are not interdependent but are independent provisions, and the unconstitutionality of the one does not affect the constitutionality of another. [Cooley, Const. Lim. (7 Ed.), p. 247; State ex rel. v. St. Louis, 241 Mo. l. c. 246; State ex rel. v. Gordon, 236 Mo. l. c. 170.] The very reason which induced the court to hold that the section of the Factory Act referring to platforms and railroad structures was unconstitutional, was that it was distinct and foreign to the other sections of the act and not pointed out in the title. If it was so dissimilar and unrelated to the remaining provisions as to warrant its exclusion on the ground that it referred to matters foreign to the subject of the bill, then its elimination does not affect the completeness or the enforceability of the section upon which plaintiff's right of action is based. Besides the independence of these two sections is shown by the language of each. We hold the section under which plaintiff's suit is brought to be constitutional and enforceable in all cases justly falling within its provisions.

Plaintiff in this case has not brought himself within the scope and purview of that section. His action is solely based on it. Whatever may have been his rights at common law, he is not entitled to recover in the present action; and the judgment in this case is reversed.

*Graves, Faris* and *Walker, JJ.,* concur in this opinion; *Lamm, C. J., Woodson* and *Brown, JJ.,* dissent in opinion by LAMM, C. J.

## SEPARATE OPINION, CONCURRING IN PART AND DISSENTING IN PART.

LAMM, C. J.—This case was assigned to me in division and came into Banc on a dissent. In Banc it was reassigned and written by Brother Bond. On what was considered in division the main question he adopts the view of the divisional opinion. In other matters on the scope of the Factory Act, he does not. For reasons apparent I refile my divisional opinion as a concurring one in part and a dissent in part.

In November, 1909, defendant was in the business of manufacturing engines in Kansas City. Plaintiff, for a fortnight in defendant's employ as a. pattern-maker, on the 16th of that month, while in the line of his duty, was tripped up in the uncertain light of the early morning by an unguarded belt stretched a' little above the floor across an aisle or passageway of defendant's factory. This belt connected an electric motor with a boring machine and, when in use, furnished motive power to the latter. Gravely injured in both elbows by his resulting fall, he sued, grounding his action on Revised Statutes 1909, section 7828, reading:

"The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

From a judgment of $3750, defendant appealed to the Kansas City Court of Appeals. Having taken time to consider, that court was of opinion its jurisdiction was ousted because of a constitutional question. Whether that was so or not so, we are in no little doubt. But as our learned brethren of that

court are without doubt, we (being in doubt) acquiesce in their view of it. In one sense both courts are a composite unit (Zellars v. Surety Co., 210 Mo. l. c. 105) and members of the same body for that they perform a common duty. In that broad view of it (having in mind Lord Coke's figure of "the gladsome light of jurisprudence"), when the sun of certainty arises and shines in *one* court, it may be allowed to somewhat dispel the shadows of doubt in the *other*.

Said section 7828 was section 3 of an act entitle: "An act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employees." [Laws 1891, p. 159.] The issues seek a study of that act with some particularity. Its first section makes it the duty of the authorities of each city to appoint an inspector. This provision does not seem to have been carried forward as live law in revisions of our statutes, but a scheme of State inspection was substituted to add vigor and mettle to the execution of the law. The second provides for said inspector reporting to the Commissioner of Labor. The fourth prohibits employers requiring women to clean any part of a mill, gearing, etc., while in motion. The fifth requires well-holes, hatchways and elevators to be protected by trap doors, etc. The sixth provides for fire escapes. The seventh ordains that main doors shall open outwardly "when the inspector in writing so directs." The eighth ninth, tenth, eleventh, twelfth and thirteenth are provisions not material here. The fourteenth provides that an inspector shall have authority to order a fan or some other contrivance to be put in where practicable to prevent the inhalation of dust or smoke by employees. The fifteenth gives the Labor Commissioner power, under given circumstances, to prevent over-crowding employees. The sixteenth (now Sec.

7842, R. S. 1909, as amended in immaterial aspects) reads:

"Whenever the factory inspector, or assistant inspector, finds that the heating, lighting, ventilating or sanitary arrangements of any establishment where labor is employed is such as to be dangerous to the health or safety of employees therein or thereat, or the means of egress, in case of fire or other disaster, are not sufficient, or that the building, or any part thereof, is unsafe, or that the belting, shafting, gearing, elevators, drums or other machinery are located so as to be dangerous to employees, and not sufficiently guarded, or that the vats, pans, ladles or structures filled with molten or hot liquid, or any furnace, be not sufficiently surrounded with proper safeguards, or the platforms, passageway and other arrangements around, in or about any railroad yard or switch be such as to probably lead to injury or accident to those employed in, around or about any such establishment or place, the factory inspector or assistant inspector shall at once notify the person or persons in charge of such establishment or place to make the alterations or additions necessary within thirty days; and if such alterations or additions be not made within thirty days from the date of such notice, or within such time as said alterations could be made with proper diligence, then such failure to make such alterations shall be deemed a violation of this article."

(*Note*: This is the section held in judgment in this case and also in the Williams case, infra.)

Section 20 (now Sec. 7844, R. S. 1909) required platforms, etc., around railroad yards, switches, freight houses, etc., to be "located, placed and arranged so as to insure, as far as possible, the safety of employees from injury or accident." (*Note*: This was the section mainly dealt with in the Williams case, infra.)

The twenty-second denounces any violation of the provisions of the act a misdemeanor and names the punishment as a fine with commitment to the common jail until paid. The other sections also relate to the enforcement of the law and are immaterial for present purposes. They may be found in Revised Statutes 1909, sections 7846 to 7852 inclusive.

I.   The first two main questions on this appeal hinge on Williams v. Railroad, 233 Mo. 666. They may be stated in this way: In that case section 7844 (20 of the original act) was declared unconstitutional because its subject-matter (railroad platforms, etc.,) was not "clearly expressed in its title" as required by the Constitution—railroads being a well-recognized matter of classification in legislation. Now, assuming that section to be unconstitutional, as decided in the Williams case, would that ruling make void the whole act, or only the section denounced, and leave the act otherwise a valid law? Again, after declaring said section 7844 invalid because of said infirmity, we went on in the Williams case to discuss another view of the Act of 1891 and held in effect that, even if section 7844 were valid, there could be no such violation of it, as would create a civil liability, until *after* an inspector notified the person or persons in charge of the depot platform to make the alterations or additions necessary, and after thirty days had elapsed in which to make them, as provided by section 16 of the original act, now section 7842, supra. On such premise the second question is: Is that decision in that particular a proper interpretation and construction of the statute, and must this plaintiff be cast because of the fact that by neither allegation nor proof was such notice made to appear?

(a)   *Of the first question.* In administering written law it is not uncommon to find this or that part,

*Constitutionality of Factory Act.*

feature or provision of an act is void from some such infirmity as a violation of the Constitution, and that the remainder is not afflicted by the same vice. In such predicament, if courts can sustain the part left it is their bounden duty to do so and thus give efficacy to remaining provisions.

Briefly, the rule to go by is: If the invalid provisions or features are separable from the rest, and if, after pruning them away, there is left a complete, rounded-out enactment, one susceptible of enforcement and in line with the intendment and object of the lawmakers, as gathered from his whole act, then courts play a nursing and fatherly role. They will not adjudge the whole law unconstitutional but will reject invalid and sustain valid provisions. To this end, it matters little whether the unconstitutional and constitutional provisions are mingled in the same section or scattered throughout the entire act, so long as they are so distinct and separable that though some fall the rest may stand. If, however, the provisions of a statute are mutually interdependent (as for instance, where by applying the doctrine of *reddendo singula singulis,* it plainly appears they are inseparably welded together) and so connected that the one serves in the relation of a condition, consideration, inducement or compensation for the other or for each other so that it cannot be said but what the lawmaker intended them to be taken conjointly as a whole, and that if one provision could not be put in force the remainder of the law would not have been passed as an independent enactment, then, if one part be bad, the other is bad and the leaven of unconstitutionality permeates the whole mass. [Black on Inter. of Laws (2 Ed.), p. 115-16; State ex rel. Tolerton v. Gordon, 236 Mo. l. c. 170, et seq.; State ex rel. Bixby v. St. Louis, 241 Mo. 231.]

Now, an examination of the Act of 1891 demonstrates beyond all cavil or doubt that its provisions

*Separable Sections.*

are separable; that the general purpose of the law (to-wit, the health and welfare of those who are exposed to danger from machinery, etc.) is preserved though the part relating to railroad platforms be struck down; that there is no such interdependence between its provisions that, in right reason, the one could serve as a condition or inducement for all or any of the others, or bear the relation of cause and effect (antecedent and consequent) to each other, in the mind of the Legislature; and that there is left an intelligible and complete statute when section 7844 is discarded as unconstitutional.

In this connection we must allow some weight to the fact that the constitutionality of the Act of 1891 in some of its general features is settled. (*Transit in rem judicatum.*) It is a thing adjudicated. This is emphatically true of section 7828, now held in judgment. [Lore v. Mfg. Co., 160 Mo. l. c. 622.] In Lohmeyer v. Cordage Co., 214 Mo. l. c. 690-1, the constitutionality of that section was taken as settled and no longer so subject to reagitation as to give this court jurisdiction. True, in the Lore and Lohmeyer cases, the point now in hand was not raised or ruled, for the Williams case had not then been decided. But we take it the fact is not without stiff significance that in the twenty-one years this law has been upon the statute books, its constitutionality, in general outline, barring its railroad features, has been ruled, at least on broad lines, more than once and in many other cases reaching our appellate courts, has been assumed as no longer an open question. Indeed, we do counsel for appellant the justice of saying that, as we construe his brief and argument, he does not labor to maintain the view that the whole law perished by construction when its provisions relating to railroads were declared unconstitutional, because of a neglect in making its title an accurate and constitutional in-

dex or guide-post in that behalf. But if mistaken in this, we should rule the point against him and hold those provisions of the act, held in judgment on this appeal, so far from being weakened by the *rationale* of the Williams case, to be strengthened by it, and they must be held valid despite the fact that its railroad features are not within the purview of the title and hence are invalid.

(b) *Of the second question, viz.*: *Is a thirty-day notice from an inspector necessary before a manufacturer could be held guilty of a violation of section 7828 (3 of the original act) so as to create a civil liability on behalf of an injured employee? And herein of the Williams case in that regard.*

(*Note bene*: Observe, it is civil, not criminal, liability that is at issue on this appeal. Therefore, we should not undertake to decide whether a crime could, or could not, be committed until a notice has been given and thereafter thirty days elapsed. The maxim in that behalf is: A court has nothing to do with what is not before it. *Nihil habet forum ex scena.*)

(1) As heretofore pointed out, in the Williams case after deciding railroad provisions invalid and no law at all, because unconstitutional, we went on to discuss another hypothesis arising from an impossible fact, viz.: That even if the law were valid (observe, its invalidity had just been declared,

Res Adjudicata.

thereby making its validity an impossibility) a thirty-day notice was necessary under section 7842 (16 of the original act) before civil liability could attach to its violation or before any violation could occur; and on that hypothesis we ruled such notice and lapse of time were conditions precedent to recovery. If that case, in that particular, was reckoning with a live and real question arising on the appeal, then its decision comes within the doctrine of *stare decisis*. If the question was not a real one in-

cluded in the case, then our observations were in the nature of *obiter dicta,* and may persuade (but not bind us) in a case where, as here, the question is up and crucial. On full reconsideration, we all agree that our opinion in the Williams case, in so far forth as it dealt with the question of notice, was an inadvertent sidestep into *obiter,* by traveling further than was called for. It is axiomatic that nothing is decided by a case outside of the issues involved on the record. The law of a case springs from the facts and issues of the case. We have been so lately over that ground in State ex rel. v. St. Louis, 241 Mo. 231 (*q. v.*), that the writer can add nothing of his own worth while by a new discussion. Having soundly ruled in the Williams case that the railroad features of the law were invalid, it is self-evident that notice under section 7842 was no longer a question lodged in this court for determination; for no notice could breathe life into the dead coal of an invalid law. Therefore the question of notice or no notice filled no office but was wholly in the air and academic. The law being dead, we may not assume it alive in order to draw the question of notice within the case. It follows that what we said on notice was in the nature of *punishment after death* —a mere theological dogma much bruited but unknown to the laws of men in modern times. In so far as the reasoning of the Williams case in that regard meets our approval when called on to apply it, it, as said, remains persuasive; but in so far forth as it undertook to *decide* the point it is not *res adjudicata.*

It should be held, then, that the question of the necessity of the thirty-day notice before civil liability attaches is not precluded by the Williams case but is open.

To a consideration of it, we pass.

(2) In the first place, at common law a master was not required to fence or guard his dangerous machinery in order that his servant might not hurt him·

self. The Act of 1891 is, therefore, in contravention of the common law and must be construed, as to some of its features, with some strictness. Judicial attention is to be fastened on its letter and it

**Antecedent Notice.** is not to be aided by mere equitable intendments. However, it is a highly remedial and salutary act, made necessary by changed and inflamed conditions, and hence should be approached in no hostile or indifferent spirit, as if to drive a coach-and-six through it and break down its efficiency by strained or over-nice construction. The chief commandment of the law of interpretation of statutes, to which all others are subsidiary, is: To seek as with a lighted candle for the intent and purpose of the law giver and enforce that intent and purpose, when found, so as to, on one hand, allay mischiefs struck at by the law, and, on the other, advance its benefits.

In the second place, as was permissible, the Act of 1891 has both a civil and a penal side. The one looking to a civil duty, for the negligent breach of which a civil liability arises, the other looking to a public duty, the violation of which would be a criminal offense to be visited by the rigors of a criminal prosecution and punishment. We would naturally expect, then, that some of its provisions look to the civil and some to its penal side in order to make all of them effective.

In the next place, section 3 of the original act (now 7828) prescribes a duty to guard and fence dangerous machinery, including belting in given circumstances, or to post a notice when a guard is impossible. By necessary implication, when a statute is silent in that regard, as is this, a negligent breach of a duty imposed by it for the benefit of persons, followed by injury to any such person, creates a civil liability for such resulting damages. [Bl. Inter. of L. (2 Ed.), p. 85, et seq.; Willy v. Mulledy, 78 N. Y. l. c. 314; Rose

v. King, 49 Ohio St. l. c. 224, et seq.; Wharton, Neg. (2 Ed.), sec. 443.]

"In every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law." [Comyn's Dig., *Action upon Statute*, F.] All of which is agreeable to the maxim: *Ubi jus ibi remedium*. That the right of action for a breach of duty imposed by statutes of the character we are considering is actionable, springs from the general proposition just announced. [*Vide* Willy and Rose cases, supra.]

In the next place, in the exposition of section 7828 it has been held uniformly that its violation is "negligence *per se*." [Lore v. Mfg. Co., 160 Mo. l. c. 622; Colliott v. Mfg. Co., 71 Mo. App. 171; Millsap v. Beggs, 122 Mo. App. l. c. 6-7.] Now, what does "negligence *per se*" mean, other than that it is negligence in, of, by or through itself, as a matter of law and without anything more? The very term imports that meaning. Section 7828 prescribes a simple, plain duty by employers to their laborers. It says nothing about notice to an employer by an inspector. It is as definite and certain as it could well be made by the lawmaker in order to be efficient and effective; for, if he had left off the use of general language and gone to enumerating, he would have weakened a general law and fallen foul of the maxim *expressio unius*. How could a notice from an inspector aid the law, or the employee for whose weal it was passed? On its face it is directed (not to an inspector, but) to an employer. The law by its own vigor and own letter, lays the burden of the immediate duty of obedience upon the employer. It speaks directly and with emphasis to *him*. To hold that before it becomes operative, a notice from some inspector is necessary to impose the civil duty, in order to jog the

249 Mo.—26

mind of the master, or create the civil liability, is to read something into the section the lawmaker did not put there—and something, too, that would tend to weaken and make ineffective and absurd a beneficial statute; for its tendency would be to postpone, to dissipate and make uncertain its benefits. The inspector is not under the control of the employee. The master is on the ground, the inspector is not, except at long intervals. New machines are frequently added and new arrangements of old machinery are made in factories. Did the lawmaker intend the absurdity that the employee was to have no protection until a tardy inspector dropped in and threw his eye over the situation? Look at it on another side—why, absent an imperative command of the statute, should an inspector notify the master to obey the law in its civil features? Is not a master, like other men, presumed to know the law? All men are presumed to know the law (except, possibly, judges of courts. This under a thing known as *Zeitgeist*.) Such a construction we ought not to give the law unless there is no escape from it. The rule is that courts approach interpretation and construction of remedial statutes in a spirit of aiding them, when possible—not in a spirit of making them ineffective when possible.

When we held, as said, that a violation of the section was "negligence *per se*," that ruling, by implication, precludes the idea of such adventitious aid as a notice from an inspector. In that view of it, the question of notice has been heretofore impliedly ruled against appellant.

In the next place, when the lawmaker desired the interference of the inspector and a notice from him to impose a duty in the first instance, he was astute to that end. He said so in express terms and left nothing to implication. Thus, by the seventh section of the original act it is ordained that main inside and outside doors should open outwardly—when? "When the in-

spector in writing so directs.'' But subsequently the lawmaker's attention was called to that weakening provision and it was eliminated. [R. S. 1909, sec. 7832.] If section 7828 had some modifier like ''when,'' ''whenever'' or ''after'' the inspector gave notice, we would have a different case to deal with. Schwarz v. Railroad, 58 Mo. 207, was a case of that kind. There one section of an act relating to boars and rams carried a condition, to-wit, a notice, and another relating to jackasses and stallions did not. It was held that the law in one instance became immediately effective without notice, and in the other was not brought into play until notice was given.

In the next place, it is a rule of interpretation that all parts and provisions of a law should be read together and every word, phrase and provision be given some effect, if possible, and all provisions harmonized, if possible. Turning now to section 7842, relating to a thirty-day notice, an examination of its terms with its context shows that such notice filled an appreciable office in connection with the penal features of the statute. It provides that if the notice is given and thirty days elapse without obedience, such failure to obey the notice and to make the additions and alterations required thereby should be taken itself as a violation of the act. When we read in another section that any violation of the act is denounced as a misdemeanor, we see at once that a disobedience to the notice may have reference to the penal sanction of the law and thus have a function left to it. Furthermore, in this connection a careful analysis of section 7842 shows that the lawmaker had in mind that the employer should or may have already acted in obedience to the law before the inspector appeared, and that his action may have fallen short of what the law required, or be ineffective in some particular. In that event the notice would be a spur in his side by furnishing a basis for a new misdemeanor by disobedience. The inspector

thus is given a cudgel to wield in aid of an enforcement of the statute.

Again, when we read in other sections that grand juries, prosecuting attorneys and inspectors are charged with a duty to enforce the law, it is not unreasonable to look on section 7842 as leveled merely at the *enforcement and execution* of the statute as a public act having penal provisions. In this view of it, section 7842 has little or nothing whatever to do with the civil mandate of the law or civil liability on the part of the master for a violation of the duty prescribed by section 7828, but looks to the penal side of the act.

But we have pursued the matter far. The sum of it all is that, on the manifold grounds suggested, it, should be held that a notice from the inspector under section 7842 was not a condition precedent to a right of action in plaintiff under section 7828. That conclusion is buttressed upon adjudicated cases elsewhere, interpreting and construing statutes of sister States requiring dangerous machinery to be fenced and so worded as to be more open to a construction favorable to the view of appellant's counsel than are our own statutes. In many States there are laws prescribing such duty upon the master, also creating the office of inspector and prescribing his duties. Usually these statutes are long and intricate. We have examined many of them and will not swell this opinion by reproducing or analyzing their provisions. In construing them courts have taken the view that notice from an inspector was not necessary to impose the duty of obedience upon the master or give a right of action to the injured servant. The student in case law, with a prying mind in that behalf, may consult the following as in point: Rose v. King, 49 Ohio St. 213; Willy v. Mulledy, 78 N. Y. 310; Carrigan v. Stillwell, 97 Me. 247; Pauley v. S. G. & L. Co., 131 N. Y. 90; McRickard v. Flint, 114 N. Y. 222; Arms v. Ayer, 192 Ill. 601;

Buehner Chair Co. v. Feulner, 28 Ind. App. 479, 164 Ind. 368.

Finally, the Williams case, supra, on which appellant puts reliance, was ruled on the strength of a Massachusetts case. [Foley v. Pettee Machine Works, 149 Mass. 294.] A re-examination of the Massachusetts statute shows that the decision in the Foley case took color and substance from its peculiar wording. In the Massachusetts statute, the phrase "the opinion of the inspector," was interwoven with the section creating the liability in such a way as to make the inspector's "opinion" a condition precedent to a violation of the law or a right of action. [*Vide* that statute, copied into the Williams case, pp. 683-4.] That statute, for reasons of its own, made the opinion of the inspector a *sine qua non.* There are some cases in Michigan, construing a statute similar to that of Massachusetts, running to the same effect. In the Michigan statute a guard was made necessary "when deemed necessary by the factory inspector." [Kerr v. Mfg. Co., 155 Mich. 191.] Those cases do not construe statutes worded as ours, but substantially variant. Hence this division of the court fell into error in following the Massachusetts doctrine in the Williams case and that case should be no longer followed on the question of notice, but be taken as modified as herein stated.

The point should be ruled against appellant.

II. It is assigned for error that a demurrer was overruled to the evidence, that a certain instruction was given for plaintiff, that certain other instructions were refused for defendant, and that improper testimony was admitted and proper evidence ruled out.

As to the demurrer, we are of opinion it was well ruled. In so far as it is based on a want of notice by an inspector, the question is set at rest in the former

**Application of Statute.** paragraph. In support of the demurrer, it is argued that the statute has no application to the accident, because: First, the belt was stationary; second, there was no reasonable ground to anticipate that plaintiff would come in contact with it while in the line of his duty; and, third, the belt was not so located as to be dangerous to plaintiff while he was in the line of his duty, because he chose a dangerous way to travel when other ways were open.

Plaintiff, as said, was hurt early in the morning. He was hurrying down a factory aisle to "register in" for work at a "register clock" provided for that purpose. The light was uncertain at that hour of a winter morning and the belt was in the shadows of surrounding objects. It had been in use for about one week and there is evidence tending to show that plaintiff did not know it was in use. There was a space of two or three feet of the aisle not occupied by the belt. There was another aisle plaintiff could have used, *but there was testimony to the effect that the aisle he did use was in customary use to the master's knowledge.* At the instant he tripped and fell, the belt was stationary—that is, in the sense only that the motor was not running. If this belt had been out of reach over the head of plaintiff and had burst while in use and injured him, or if it had been disconnected from the machine and lying in a heap on the floor, we would have had a different case to deal with. True it was not in motion at the instant, but we are not prepared to narrow the scope of the statute to dangerous unguarded machinery and belting merely while in motion. The factory was a live factory, the hour of the accident was a business hour, the machine run by the belt was a going machine—i. e., one that had been used and was intended to be used. That the belt was not in motion at the instant of time was a mere incident of its use. It is evident enough that

machinery and belts while in motion may increase the hazard of employees, but does mere motion of belt or machine do all the mischief? As the statute says nothing about *motion* we are not prepared to read "motion" into it, or say that the danger from an unguarded belt, stretched in the uncertain light across the pathway used by employees about their ordinary duties, and unknown to them, is not one of the dangers within the purview of the statute. No device more cunningly calculated to trip and injure a footman could be well imagined, than a flexible belt stretched close to the floor. That an employer would have no reasonable grounds to anticipate that plaintiff would come in contact with a belt, stretched in that way, is not a proposition commending itself. There was no testimony tending to show that plaintiff was guilty of contributory negligence, as a matter of law, and defendant had the advantage of favorable instructions on contributory negligence. The issue was for the jury and their verdict eliminates the idea of plaintiff's negligence. It is also argued that a failure to guard the belt did not contribute to cause the accident and that plaintiff failed to show that it was possible or reasonably practicable to guard the belt. These questions were also submitted to the jury, as was proper. The place, time and environment were all described to the jury. They had them in mind as if by a picture. In Huss v. Bakery Co., 210 Mo. 44, it was held, on proof no more substantial than here, that it was a question for the jury whether it was possible or practicable to guard machinery. So the jury were as capable as this court of deciding whether the presence of the belt was the proximate cause of the accident. (But if it were left to us, we would say it was.) What is a proximate cause is often one of the most subtle and profound questions that ever vexed philosophers. I remember it was told of no less men than Pericles and Protagoras that they argued for a whole day on whether

the dart, or the thrower of the dart, or those who arranged the game, was the cause of the death of a participant in the Olympian Games. The better view is that where permissible on the facts, as it is in this case, to the jury is left the issue of fact of proximate cause. Says Mr. Justice HUNT (Railroad v. Stout, 17 Wall. l. c. 664):

"Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge."

Now and then a jury has been called, in sneering irony, the "Apostolic Twelve." But there is another view by VALLIANT, J., I have been fond of referring to. [MacDonald v. Railroad, 219 Mo. l. c. 483.] And another, the animated pronouncement of Brougham (*Present State of the Law, February* 7, 1828) viz.: "In my mind, he was guilty of no error, he was charged with no exaggeration, he was betrayed by his fancy into no metaphor, who once said that all we see about us, kings, lords and commons, the whole machinery of the State, all the apparatus of the system, and its varied workings, end in simply bringing twelve good men into a box."

Complaint is made of plaintiff's instruction number one. We will not reproduce it; for we find no fault with it.

It is argued that the court erred in refusing one out of the six instructions refused for defendant. But

we find no error in that respect. The case was fully and well instructed on.

The point is made that the verdict is excessive. We find plaintiff was seriously injured in both arms. The injury was of such sort that we ought not to cut down the size of his recompense.

Assignments of error relating to the admission and exclusion of testimony are also overruled. We think them without substantial merit.

On the whole record, the judgment should be affirmed. *Woodson* and *Brown, JJ.,* concur with me in these views.