## JOSEPH WREGGITT v. WILLIAM BARNETT.

*Pleading—Injury to personalty—Evidence—Error without prejudice
—Instructions to jury.*

1. It would be over-technical to say that a smokestack was not included in "a shingle-mill outfit, consisting of engine, boiler, belts, saws, pulleys, and other machinery."

2. The erroneous admission of evidence becomes unimportant when the evidence is rendered immaterial under the charge.

3. Where after instructing the jury, in an action to recover damages for injury to machinery in removing it from a mill, that the defendant must have removed the machinery in such a way as not to cause *any* injury, the jury are further instructed that the defendant is liable only if he removed the machinery in an improper manner, so that it was injured, no room is left for misapprehension.

Error to Lapeer. (Moore, J.) Argued February 15, 1894. Decided March 27, 1894.

Case. Defendant brings error. Affirmed. The facts are stated in the opinion.

*Stickney v. Halpin,* for appellant.

*Geer & Williams,* for plaintiff.

HOOKER, J.   Wreggitt, the plaintiff, contracted with the defendant to erect a shingle mill upon the premises of the latter, and manufacture shingles from the timber thereon.   He set up his mill, but did not manufacture many shingles, and, after the lapse of some time, the defendant removed the mill from its site to make room for another.   Plaintiff brings this action for damages by reason of alleged injury to the mill from careless handling and improper shelter.   Defendant attempts to justify his conduct in the matter, and appeals from a judgment in favor of the plaintiff.   Plaintiff gives, as a reason for his failure to manufacture the shingles, the fact that defendant refused to furnish lumber to inclose the mill. Defendant contends that the contract did not require it, and, as the circuit judge so instructed the jury, there is no occasion to consider that question.   The case must, therefore, have gone to the jury upon the theory that unnecessary injury was caused to the mill.

The first allegation of error is that the court should have excluded evidence tending to show damage to the smokestack, because not a part of a shingle mill.   The declaration, however, says that the plaintiff was the owner of "a shingle-mill outfit, consisting of engine, boiler, belts, saws, pulleys, and other machinery," and "that defendant removed said machinery."   We think that it would be over-technical to say that a smokestack was not included.

The plaintiff was allowed to testify that he could not run the mill when not inclosed.   This was in response to

a cross-examination indicating a defense upon the ground of a failure on plaintiff's part to perform the contract, and, while the testimony was immaterial under the construction finally given to the contract, the question had not yet arisen. Moreover, when the court told the jury that a failure by the defendant to furnish lumber was no excuse for plaintiff's delay in finishing the mill, this testimony became obviously unimportant.

After stating to the jury that, if Wreggitt refused to proceed and cut the shingles, defendant might remove the mill, he continued as follows:

"If the jury find that the plaintiff had abandoned the contract, then the defendant had a right to enter upon the premises and remove the mill therefrom. Of course, this last request is to be taken in connection with the request which I have given you on the other side; or, if you find as a matter of fact that there had been an abandonment on the part of the plaintiff of the contract, that would authorize the defendant to remove the property, still, he must remove it in such a way as not to cause *any* injury; he must act as a reasonable man would act under like circumstances with his own property."

It is urged that the jury were directed that the defendant was liable for *any* injury. The next sentence qualifies the use of the word, and in another part of the charge he instructed the jury that defendant was liable only "if he did it in an improper manner, *so that it was injured*, and the pulleys exposed to the sun and rain unnecessarily, so that they were injured." This left no room for misapprehension.

There was some testimony to the effect that Wreggitt assigned an interest in the contract to one Cummings. Upon that subject, the court said:

"The court instructs the jury that the defendant had no right to attempt to terminate the contract after he had notice that George H. Cummings had purchased an interest in the contract, and defendant had consented to

that arrangement, if plaintiff and said Cummings were in good faith preparing to and would have carried out Wreggitt's part of the contract."

It is said that by the use of the word "and" the court assumed that the defendant had consented to such arrangement. We think otherwise, and, finding no error in the record, the judgment must be affirmed.

McGRATH, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.