GARRARD STRODE, Administrator Estate of JOHN FINDLAY, Appellant, v. COLUMBIA BOX COMPANY.

### Division One, May 31, 1913.

1. **NEGLIGENCE: Specified: Must be Proved as Laid.** A petition alleging that plaintiff was injured by the breaking of a belt which was "old, worn, rotted and patched, as defendant and its servants well knew," can be recovered upon only by a showing of specific defects pleaded.

2. ————: **Sec. 6433, R. S. 1899: Belting to be Guarded: No Notice Requisite.** The necessity for compliance with the provisions of Sec. 6433, R. S. 1899, requiring belting, shafting, gearing and drums to be guarded when so placed as to be dangerous to employees, is not dependent upon, and does not wait upon, notice from the state factory inspector.

3. ————: **Penal Statute: Equitable Construction.** A statute which is penal to some persons may, provided it is beneficial generally, be equitably construed.

4. ————: **Sec. 6433, R. S. 1899: Construction: Guarding Mechanical Appliance: Evidence.** Plaintiff was injured while operating a machine which took its power, by a smaller belt, from a shaft near the ceiling above.  The shaft was driven by a long belt which entered the room, went round the shaft eighteen

inches above plaintiff's head and then pierced the floor to an upper room. This belt broke and struck plaintiff on the head with enough force to injure him seriously. *Held*, that such belt did not fall within the provisions of Sec. 6433, R. S. 1899, requiring belting, etc., to be guarded when so placed as to be dangerous to employees, and plaintiff cannot have damages as for statutory negligence.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

AFFIRMED.

*A. R. Taylor* for appellant.

(1) The court erred in sustaining a demurrer to the evidence at the close of the evidence for plaintiff. The demurrer to the evidence admits the truth of every fact which the evidence tends to prove, an axiom of decision in this State. Wilson v. Board of Education, 63 Mo. 140; Strauchon v. Railroad, 232 Mo. 595. (2) If a fair mind may draw inferences from the evidence as tending to establish the issue, the case should go to the jury—another settled rule of decision. Eckhard v. Railroad, 190 Mo. 611; Powers v. Transit Co., 202 Mo. 280; Ellis v. Railroad, 234 Mo. 673. (3) This case was a case for the jury upon the common law ground of negligence, as well as the statutory ground. A clear case of negligence at common law, as well as under the statute, was made when it was shown, as it clearly was shown, that the belt in question was worn, riveted and reglued to prevent its coming apart. It is no answer to say that the master, by his agents having charge of the repair of the belt, couldn't anticipate what particular damage a broken belt would inflict or who would be injured. "If the injury follows as a direct consequence of the negligent act or omission, it cannot be said that the actor is not responsible therefor because the particular injury would not have been anticipated." Harrison v. Electric Co., 195 Mo.

606; Hoepper v. Hotel Co., 142 Mo. 388; Graney v. Railroad, 140 Mo. 98; Smith v. Railroad, L. R. 6 C. P. 20. (4) The statute on which the plaintiff relies as part of his ground of recovery has been adjudged constitutional according to its terms and language. Lore v. Mfg. Co., 160 Mo. 622; Durant v. Coal Co., 97 Mo. 62; People v. Warden, 144 N. Y. 529; People v. Smith, 108 Mich. 531. (5) A failure to comply with the statute according to its terms is negligence *per se*. The statute is remedial. Calliott v. Mfg. Co., 71 Mo. App. 171; Lore v. Mfg. Co., 160 Mo. 622; Strode v. Box Co., 124 Mo. App. 516. ''No less measure of diligence can be written into the statute. When meaning of statute is clear courts have no power to make qualifications or additions to cover seemingly omitted cases.'' Durant v. Coal Co., 97 Mo. 65; Lore v. Mfg. Co., 160 Mo. 624.

*Seddon & Holland* for respondent.

The court did not err in giving the peremptory instruction in this case at the close of plaintiff's testimony for the following reasons: (1) There was no testimony to sustain the common law charge of negligence in reference to the belt. On the contrary the plaintiff's witnesses showed that the belt just prior to the accident was in good condition. (2) In reference to the charge of statutory negligence in failing to guard the belt, the statute contemplates that belts in certain cases shall be so guarded that persons may not be injured by coming in contact with them while in operation. It does not require belts to be so guarded that persons may not be injured by them in case the belts break and fly out of their usual circuits. Neeman v. Smoth, 50 Mo. 525; Fusz v. Spaunhorst, 67 Mo. 256; State v. Hayes, 81 Mo. 574; Potter v. Douglas County, 87 Mo. 239. (3) In no event did the plaintiff show that the defendant was guilty of any violation

of the statute in reference to belts because the plaintiff failed to show that the belt in question was dangerous to persons while engaged in their ordinary duties. On the contrary the testimony introduced by plaintiff showed that the belt was not dangerous, that is that the breaking of said belt was a most extraordinary occurrence, and could not reasonably be anticipated. Findlay v. Columbia Box Co., 124 U. S. 511; Hindle v. Birthistle, L. R. 1 Q. B. 1897; Dillon v. Coal Tar Co., 181 N. Y. 215; Cement Co. v. Insurance Co., 152 N. Y. Supp. 1068; Byrne v. Carpet Co., 61 N. Y. Supp. 741; Glassheim v. Printing Co., 34 N. Y. Supp. 69; Polawske v. Brick Co., 110 Wis. 461; Robertson v. Ford, 164 Ind. 538. (4) The statute in reference to guarding belting, Sec. 6433, R. S. 1899, after providing that belts shall be guarded under certain circumstances, specifically defines what shall constitute a violation of the statute. It provides in substance that whenever the Commissioner of Labor shall notify the proprietor of a plant that a belt is dangerous to employees and insufficiently guarded, and such proprietor of a plant shall thereafter fail to guard same, then such failure shall be deemed a violation of this article. Where the statute specifically defines what shall constitute a violation the idea is definitely excluded that any other act shall constitute such violation. State v. Fisher, 119 Mo. 344; State v. Gritzner, 134 Mo. 512; State v. Winthrop, 133 Mo. 500; Miller v. Wagner, 18 Mo. App. 14; Grumley v. Webb, 44 Mo. 444; Dart v. Bagley, 110 Mo. 42; State v. Schumann, 133 Mo. 111; Endlich on Interpretation of Statutes, sec. 216; Rozelle v. Harmon, 103 Mo. 399; State v. Schumann, 133 Mo. 111; State v. Reid, 125 Mo. 43; State v. Railroad, 19 Mo. App. 104; Jackson v. Railroad, 87 Mo. 422; Borck v. Bolt & Nut Works, 111 Mich. 129; Monforton v. Brick Co., 113 Mich. 39; Greenhaus v. Akter, 30 N. Y. App. Div. 585; Pauley v. Steam Gauge Co., 131 N. Y. 87; In re Fire Escapes,

2 Pa. Dist. Rep. 623; Perry v. Bangs, 161 Mass. 35; De Genther v. New Jersey Home, 58 N. J. L. 354.

BROWN, C.—This is an action to recover damages on account of injuries to plaintiff, an employee in defendant's box factory in St. Louis, from being struck on the head by a broken belt while operating a wood matching machine in the factory. At the close of the plaintiff's evidence the court instructed peremptorily for the defendant. This appeal is taken from the judgment of non-suit forced upon plaintiff by this action, and, which, upon motion duly filed with leave, it refused to set aside.

The plaintiff was employed in operating a wood working machine, called a matcher, in the basement. The mandrel of this machine made from twenty-nine hundred to three thousand revolutions per minute and seems to have been driven from a shaft hung upon the floor system overhead. This shaft was, in turn, driven by the belt which was the direct cause of the accident. This belt was of leather, forty-three feet ten inches long, ten inches wide and from one fourth to five sixteenths of an inch thick. It was built in sections from four to seven feet in length, fastened together with laps in which about eight inches of the ends to be joined were bevelled uniformly to an edge at the ends and glued, so that the joint so made was of uniform thickness in all its parts and with the rest of the belt. The thin edges of these laps would sometimes loosen up and "ears" would turn up. This would be indicated by a buzzing sound easily detected, and which it was the duty of the operator to report, when it would be reglued so far as necessary by the machinist. This belt passed around a pulley upon the shaft hung beneath the floor above the plaintiff's machine, at an elevation about eighteen inches higher than his head when standing, and up through the floor into the room above, and thence to its driving pulley somewhere in

that room. There were from five to seven "idlers" over which this belt ran. These are pulleys through which no power is transmitted but are used simply to deflect or tighten the belting. The belt broke with a ragged tear across the material outside the laps and came off its pulleys into the basement, striking plaintiff on the head with sufficient force to injure him seriously. The petition states that the belt was so placed as to be dangerous to the plaintiff while engaged in the ordinary duties of his employment, and charges negligence as follows:

"And the plaintiff avers that said belting was not safely or securely or otherwise guarded as required by the statute, although it was possible and practicable to do, which violation of the statute of Missouri directly caused and contributed to the plaintiff's said injuries. And for another and further assignment of negligence, the plaintiff avers that said belt was old, worn, rotted and patched, as the defendant and its servants charged with the duty of keeping said belt in repair well knew before the injury to the plaintiff aforesaid. Yet defendant and its said agents negligently failed to supply a proper and secure belt, and negligently provided said belt in said defective condition, where plaintiff was to work about in the discharge of his said duties. And the plaintiff avers that said belt was so caused to give way and break and injure the plaintiff by reason of its said defective condition."

There is no evidence that this break occurred on account of the age of the belt, or because it had been weakened by age, or was worn, or rotten, or patched. The pulley above plaintiff's head, from which the belt ran off and struck him, was between two of the floor timbers, but there was no guard or structure beneath it, so as to intervene between it and the defendant's head.

I. The plaintiff failed to prove the defective condition of the belt in any of the respects charged in the petition. It is true one of the witnesses used the expression "it was an old belt," but the same witness afterward qualified the statement by saying that it was a comparatively new belt, about five and a half months old, and there was no evidence that it was worn so as to make its continued use improper or negligent, or that it was rotten or patched. The charge that the belt was defective was expressly limited in the petition to these specifications, which, under the well settled rule in this State, limit the right of recovery. [Beave v. Transit Co., 212 Mo. 331, 352, 353; Newlin v. Railroad, 222 Mo. 375, 393.] On the other hand the plaintiff proved many causes that might and did at times result in the breaking of good belts, such as running off their pulleys, and thus coming in contact, while in rapid motion, with the stationary parts of the machinery, and the falling into them of foreign articles. There being no evidence that the breaking of the belt resulted from any of the causes assigned therefor in the petition there could be no recovery on that ground.

*Negligence: Specified: To be Proved as Laid.*

II. The only remaining charge in the petition is that the belting was not safely or securely or otherwise guarded as required by statute, although it was possible and practicable to so guard it. This leads us to the consideration of section 6433, of the Revised Statutes of 1899, upon which it is founded. The section is as follows: "The belting, shafting, gearing and drums in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely

*Sec. 6433, R. S. 1899: Belting, etc., to be Guarded: No Notice Requisite.*

guarded when possible; if not possible, then notice. of its danger shall be conspicuously posted in such establishments.''

This section constitutes a part of article 17, which is entitled ''Factory Inspection in Cities with 5000 Inhabitants or More.'' Section 6450 makes the violation of any of the provisions of the article a misdemeanor, punishable upon conviction by a fine for the first offense of not less than twenty-five nor more than two hundred dollars, and for each subsequent offense not less than one hundred nor more than five hundred dollars, and commitment until the fine and costs shall be paid.

It thus appears that, in this respect the statute is highly penal. Invoking the principle that on this account it should be strictly construed, the **Penal Statute Equitably Construed.** respondent directs our attention to section 6446, contending with much force that no duty arises under it with respect to the statutory negligence charged in the petition until notice is given to the person in charge to make the additions or alterations required to conform to the statute, and he has failed to conform to the direction. The section is as follows:

''Whenever the Commissioner of Labor, or assistant inspector, finds that the heating, lighting, ventilating or sanitary arrangements of any establishment where labor is employed, is such as to be dangerous to the health or safety of employees therein or thereat, or the means of egress, in case of fire or other disaster, are not sufficient, or that the building, or any part thereof, is unsafe, or that the belting, shafting, gearing, elevators, drums or other machinery, are located so as to be dangerous to employees, and not sufficiently guarded, or that the vats, pans, ladles or structures filled with molten or hot liquid, or any furnace, be not sufficiently surrounded with proper safeguards, or the platforms, passageways and

other arrangements around, in or about any railroad yard or switch be such as to probably lead to, injury or accident to those employed in, around or about any such establishment or place, the inspector or assistant inspector shall at once notify the person or persons in charge of such establishment or place to make the alterations or additions necessary within thirty days; and if such alterations or additions be not made within thirty days from the date of such notice, or within such time as said alterations could be made with proper diligence, then such failure to make such alterations shall be deemed a violation of this article."

This entire article was enacted in 1891 (Laws 1891, p. 159) under the title of "An Act relating to manufacturing, mechanical, mercantile, and other establishments and places, and the employment, safety, health and work hours of employees." It was carried without amendment into the Revised Statutes, and was in force at the time of this accident. It covers many subjects germane to the title, including the duty to report accidents, the regulation of work required from minors and women with provisions for their comfort and health, the extinguishment of fires, escape in case of fires, the storing of explosives, ventilation and overcrowding, the construction of scaffolds and the safe arrangement of railway terminals, as well as the requirements for the protection of machinery which are involved in this case. The penal provision applies to all these things. The fines are to be paid into the common school fund of the county in which the offense was committed, and it is made the duty of prosecuting attorneys to lend all possible aid in prosecutions for violation of its provisions. The section last quoted, it will be seen, applies especially to those subjects about which opinions as to the best methods of accomplishing the required result may differ, and its provisions are not made specially applicable to cases in which nothing has been done to conform to

the requirements of the statute, but they may be invoked whenever the inspector thinks that the steps already taken whether done at the initiative of the owner or by his own direction, have been insufficient to meet the requirements of the situation. In other words, it is his duty to keep pace with the times, and to adopt from time to time such methods of insuring the safety of the employees as advancing practice may suggest. To give the inspector power to make these changes seems to have been a principal object of the section. Alterations, as well as additions, are especially included in this duty. The theory of the respondent is that the command of the statute in these respects imposes no duty whatever upon the operator of the establishment; in fact, that so far as the common law duty to furnish his employees a reasonably safe place in which to work might include them it is suspended until the inspector shall have added his requirement to the mandate of the Legislature.

There can be no question that the provisions of this statute so far as they provide protection for a large class of the people of the State are highly remedial in their nature. The fact that the Legislature has considered it necessary to enforce them by *quasi* criminal pains and penalties only emphasizes their importance. It is true that such penalties will not be imposed until it appears clearly that they were intended by the Legislature, but in this case no such imposition is involved. The fact that a private right may be deemed so important to the public safety that its violation is made a crime should add no embarrassment to the remedy of the person injured.

In Sickles v. Sharp, 13 Johnson, 497, the Supreme Court of New York states this principle as follows:

"The rule that penal statutes are to be construed strictly when they act on the offender, and inflict a penalty, admits of some qualification. In the construction of statutes of this description, it has been often

held that the plain and manifest intention of the Legislature ought to be regarded. A statute which is penal to some persons, provided it is beneficial generally, may be equitably construed.''

In conformity to the rule so stated, this court has always construed the section we are now considering as remedial in its nature, and as establishing a rule of care in the operation of dangerous appliances of which the courts will take notice even though the statute be not specially pleaded. [Lore v. Manufacturing Co., 160 Mo. 608; Lohmeyer v. Cordage Co., 214 Mo. 685; Bair v. Heibel, 103 Mo. App. 621.] In the numerous cases in the appellate courts of this State in which the protection of this section has been invoked by the employees, it has been assumed that for such purpose it is available without any action on the part of the inspector. A fair construction of section 6446 indicates that it was intended, in the particular cases to which it refers, to impose an additional liability, founded alone upon disobedience to his requirements. It takes nothing away from the mandatory character of section 6433.

Whether the situation upon which the plaintiff seeks to recover comes within the prohibition of section 6433 is a question involved in some difficulty. This particular case, however, was before the St. Louis Court of Appeals on appeal from a former judgment in Strode v. Columbia Box Company, 124 Mo. App. 511, and although the decision of that court reversing a judgment for plaintiff was placed entirely on other grounds, the learned judge who wrote its opinion made some observations, evidently designed to be useful in another trial, which may be construed to support the position taken by the appellant that the section in question was intended not only to obstruct or warn employees from contact with the belt while being normally operated, but was also intended to insure their

protection against accidental breaking. It is argued
that the beneficent purpose of the Legislature was
such that the duty to ''fence'' arises not only when the
appliance is so placed that employees may be injured
by coming into contact with it, but whenever it is lia-
ble to break so that the whole or any part of it may
leave its place and come in contact with them. This
theory carried to its full extent would apply to steam
boilers which are liable to explode, heavy balance
wheels which sometimes go to pieces from centrifugal
force and scatter their tons of metal in unforeseen
places, and, in fact, to all kinds of machinery which are
liable to give way from the strains incident to their
movement. The addition (Laws 1909, p. 502) of the
words ''machines, machinery,'' to this section, places
all such agencies within its terms. The word ''guard''
is of extensive application. It applies as well to the
guarding of a person to prevent his escape, as to the
guarding of the same person to protect him from exter-
nal violence; but whenever it is used in the public
laws its definition must be looked for in the intention of
the Legislature, and this can only be ascertained by
considering the meaning of the words in connection
with the subject-matter to which they are applied.

In this case the subject was danger from ''belt-
ing, shafting, gearing and drums'' and the law was
intended to prevent injury to employees by these par-
ticular agencies as distinguished from all

**Evidence.**

others. The peculiar dangers incident to
their use were known and recognized by all, for who
has not heard of persons thoughtlessly coming in con-
tact with belts and being drawn by their clothing into
their movement, so that their limbs or bodies were
broken around the drums upon which the belts ran; or
with rapidly revolving shafts with projecting set
screws and other appliances almost invisible on account
of the rapidity of their rotation, catching the unwary
and drawing them into the movement; or with the gear-

ing into which one's members may be drawn and crushed as in Lore v. Manufacturing Company, supra. These particular appliances have well known dangers peculiar to themselves, and it was against these that the law was evidently directed. Every working machine may break and become dangerous in its failure, but the peculiar danger of these consists in the constant and perfect performance of their work, and is an incident to their necessary and effective operation; and it is with reference to this well known and universally recognized condition that we would expect the word "guarded" to be used. Other subjects of solicitude in the framing of this act were hatchways and well-holes. The catch words of section 6435 use the word "guarded" with reference to these, and the section requires, where more effective means cannot be used, that they be surrounded by sufficient guard-rails, all of which refers to the peculiar dangers which may come out of them, as the flame and smoke they sometimes emit with deadly effect in cases of conflagration. The belt itself in this case affords an excellent illustration. There was very little of it that came into the room where this boy was working. It simply passed through the floor, went around its pulley and went out into the room above and ran so far to find its driving pulley that the evidence speaks of an idle pulley upon which it ran fourteen feet above the floor. As it was nearly forty-two feet long it must have gone still further. The plaintiff proved by his witnesses that it could not be told in what direction it would fly if it should break. This fact was so strikingly stated by the witness that the trial judge remarked: "I don't believe that you could possibly have a man if you had to have an expert on flying belts." So that to guard this belt in the sense in which it is claimed it should be guarded it would, with its six or seven idlers, have to be boxed from end to end. The most of us have seen in the machine rooms of manufacturing establishments

lines of shafting hung to the floor timbers above, extending the length of the room, with frequent pulleys from which rapidly moving belts descended to drive the machines. No one could tell which way any of these would fly were they broken, and to guard them in the sense suggested would exclude all access to them and in many cases materially embarrass their operation. There is no evidence in this case which tends to show that a greater need for this protection existed at the point where the injury occurred than at any other place in the length of the same or any other belt in the factory. We think that to hold that the statutory liability exists in this case would amount to the making of a judicial rule for the construction of manufacturing establishments using similar machinery which was not contemplated by the Legislature. The judgment of the circuit court is accordingly affirmed.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.