NATIONAL ENAMELING & STAMPING CO. v. ZIRKOVICS.*

(Circuit Court of Appeals, Eighth Circuit. April 12, 1918.)

No. 4931.

1. MASTER AND SERVANT ⊂⊃204(2)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Rev. St. Mo. 1909, § 7828, requiring belting machinery to be guarded, imposes a positive duty on the master, and abolishes the defense of assumption of risk by servants.

2. COURTS ⊂⊃366(23)—FEDERAL COURTS—PRECEDENTS.

Construction by the Missouri Supreme Court that Rev. St. Mo. 1909, § 7828, requiring the guarding of machinery, abolishes the defense of assumption of risk by the employé, is conclusive on the federal courts.

3. MASTER AND SERVANT ⊂⊃281(8)—FINDINGS—INJURIES.

A finding that plaintiff, who was injured while passing sheets of metal through a kettle containing molten zinc, for the purpose of galvanizing them, was not guilty of contributory negligence, held warranted.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied June 3, 1918.

4. MASTER AND SERVANT &⟶121(2)—INJURIES TO SERVANT—STATUTES—CONSTRUCTION.

Statutes providing for the guarding of belting machinery, etc., being highly remedial, and enacted for the protection of life, should be liberally construed, to carry into effect the legislative intent.

5. MASTER AND SERVANT &⟶121(5)—DUTY TO GUARD—"MACHINERY"—"MACHINE."

Under Rev. St. Mo. 1909, § 7828, declaring that machines and machinery in all establishments, when dangerous to employés, shall be guarded, when possible, a kettle in which zinc was molten, and which was part of the machinery for galvanizing sheets of metal passed through the kettle, should be guarded, if possible; for, while a machine is a concrete thing, consisting of all parts and devices necessary to operation, machinery is only a part of a machine designed to work with other parts, etc.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Machine; Machinery.]

6. MASTER AND SERVANT &⟶121(2)—GUARDING OF MACHINERY—STATUTES—CONSTRUCTION—"POSSIBLE."

Under Rev. St. Mo. 1909, § 7828, requiring the guarding of machinery when possible, the term "possible" was intended to mean practicable, and should be so construed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Possible.]

7. EVIDENCE &⟶513(1)—EXPERT TESTIMONY—GUARDING MACHINERY.

Expert testimony as to the practicability of guarding machinery is admissible, although it is not conclusive on the jury, which is the final judge of the facts.

8. APPEAL AND ERROR &⟶1002—REVIEW—VERDICT.

A verdict on conflicting evidence is conclusive on the appellate court.

9. TRIAL &⟶260(1)—INSTRUCTIONS—REFUSAL.

The refusal of requested instructions covered by the charge of the court is not error.

10. TRIAL &⟶252(1)—INSTRUCTIONS—REFUSAL.

The refusal of abstract instructions without support in the evidence is proper.

11. APPEAL AND ERROR &⟶1004(1)—REVIEW—VERDICT.

It is the well-settled rule in the national courts that a verdict of the jury in assessing damages in an action to recover for personal injuries is conclusive.

Hook, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Kristo Zirkovics against the National Enameling & Stamping Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert A. Holland, Jr., of St. Louis, Mo. (F. C. Sharp, Thomas G. Rutledge, and J. M. Lashly, all of St. Louis, Mo., on the brief), for plaintiff in error.

William R. Gentry, of St. Louis, Mo. (William L. Bohnenkamp, M. F. Watts, and Edwin W. Lee, all of St. Louis, Mo., on the brief), for defendant in error.

Before HOOK and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge. This is a writ of error prosecuted by the defendant in the court below, to reverse a judgment entered upon a verdict of a jury in favor of the defendant in error, for injuries sustained in an accident, while in the employ of the defendant. For convenience the parties will be referred to as they appeared in the court below.

The amended petition of the plaintiff, upon which the cause was tried, alleged that the defendant was operating a manufacturing establishment in the city of St. Louis, and the plaintiff was in its employ; that in said manufacturing establishment the defendant maintained a certain machine, or piece of machinery, commonly designated as a kettle, in which kettle certain metals were melted by the use of fire, under and around said kettle, and which was connected with machinery placed thereon and therein in such a manner that sheets of metal were carried into and through said kettle, coming in contact with the molten metal therein, and thus galvanizing the sheets of metal passed through said kettle; that the duties of the plaintiff required him to come into close proximity to the said kettle, while the machinery was being operated, and that from time to time portions of the molten metal contained in said kettle would, in the usual operations thereof, spurt out from said kettle, so as to endanger the safety of employés working about said kettle, and therefore the machinery was dangerous to persons employed thereabout, while engaged in their ordinary duties; that the laws of the state of Missouri require such dangerous machinery to be guarded, when possible, which the defendant had failed and neglected to do, although by the exercise of ordinary care it could have been done; that, while thus engaged in the duties of an employé of the defendant, a slight explosion occurred in the molten metal, whereby he was greatly injured, his body burned in numerous places, one of his eyes entirely destroyed, and the other partly destroyed. A demurrer of the defendant to this petition having been overruled, the defendant filed an answer, and, in addition to a general denial, pleaded assumption of risk and contributory negligence.

While there are a number of assignments of error, the issues of law involved are few. Most of the assignments of error refer solely to the inapplicability of the statute of Missouri to the place where the plaintiff was working, which had also been raised by the demurrer to the amended petition. Certain other assignments of error refer to alleged errors of the court in its charge to the jury. As to this last it is sufficient to say that no exceptions were taken by the defendant to any part of the charge of the court, and for this reason these assignments of error cannot be considered.

The important issues involved, which were raised by the demurrer, and by the request for a directed verdict and some special instructions asked, are: (1) Whether the kettle at which the plaintiff was employed, and where he was injured by the explosion of the metal, was required by the statutes of the state of Missouri to be guarded. (2) Was the accident caused by reason of the contributory negligence of the plaintiff? (3) Did the plaintiff assume the risk of explosion, as he knew that these explosions occurred frequently?

[1, 2] The statute upon which the plaintiff bases his cause of action is as follows:

"Sec. 7828 [Rev. St. Mo. 1909.] *Belting, etc., to be Guarded.*—The belting, shafting, machines, machinery, gearing and drums, in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to persons employed therein, or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments."

This statute has been construed by the Supreme Court of Missouri as imposing a positive duty on the employer, and that it abolishes the defense of assumption of risk by the employé (Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810), and this construction has been held to be binding on the national courts by this court in Columbia Box Co. v. Saucier, 213 Fed. 310, 129 C. C. A. 656, and Atlas Portland Cement Co. v. Hagen, 233 Fed. 24, 147 C. C. A. 94.

[3] Was the plaintiff guilty of contributory negligence? This claim is based on the testimony of some witnesses for the defendant that an explosion could not occur if the zinc was properly dried, and it is therefore claimed that the explosion must have been caused by the failure of the plaintiff to properly dry the metal before dropping it into the kettle, as he had been advised and it was his duty to do. But the undisputed evidence was that it had been dried by him before he placed it in the kettle. There was also evidence that the zinc was porous, and that the slabs were frequently found with cracks in them, and that it was absolutely impossible to make it dry at all times. In addition there was evidence that there would frequently be explosions, even when the zinc is properly dried. Upon that evidence the finding of the jury is conclusive. No exceptions were taken to the charge of the court on that issue, and it was clearly correct.

[4, 5] This leaves for determination the main question involved, whether under the statute it was the duty of the defendant to guard the kettle where the plaintiff was at work, and, if so, whether it was possible to guard it. Prior to 1909 the statute was confined to "belting, shafting, gearing, and drums," but in 1909 it was amended by inserting the words "machines and machinery."

At the very outset, we must consider the well-settled rule of law that statutes of this nature, enacted for the protection of life, are highly remedial, and must be liberally construed to carry into effect the intention of the Legislature. The intention of the Legislature is emphasized by the fact that in 1909 it saw proper to amend the act as before stated. There could have been but one object for this amendment, namely, to safeguard more fully the lives of workmen than the original act had done. This statute was so construed by the Supreme Court of Missouri in Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810.

Whether the kettle by itself, unconnected with any other machinery, would fall within the meaning of the statute, it is not necessary to determine in this case, as the evidence establishes the following facts: The kettle was in a large room, where sheets of iron were galvanized.

To perform this work a large machine, consisting of many parts, was used. There was a space surrounded by four brick walls, within which was the iron kettle. There was a space between the walls and the kettle, where charcoal was placed for the purpose of heating the kettle and melting the zinc placed in it. Over the kettle, and forming a part of the galvanizing machine, were rollers, shafts, runways, belts, and other machinery, some of which extended into the pot. From this description we are of the opinion that the melting pot was a part of the machinery used for the purpose of galvanizing sheet iron.

There is a broad distinction between "machines" and "machinery." A machine is a concrete thing, consisting of all the parts and devices necessary to its operation. On the other hand, machinery is only a part of a machine, designed to work with other parts, so as to effect the common end. Brower v. Locke, 31 Ind. App. 353, 67 N. E. 1015; Commonwealth v. Lowell Gaslight Co., 12 Allen (94 Mass.) 75; Seavey v. Central Mutual Fire Insurance Co., 111 Mass. 540; Wreggitt v. Barnett, 99 Mich. 477, 58 N. W. 467; Benedict v. City of New Orleans, 44 La. Ann. 793, 11 South. 41.

In the Lowell Gaslight Case it was held that the service pipes and consumers' meters, all connected and operating together, constituted a part of the machinery. In Wreggitt v. Barnett the court held that a smokestack used in a manufacturing establishment was included as machinery. In East Tenn., etc., R. Co. v. Thompson, 94 Ala. 638, 10 South. 280, a supply pipe of a water tank was held to be a part of the machinery.

The contention that the statute must be limited "solely to dangers of employés coming in contact with agencies of power and motion, while moving in their normal orbits, and not the dangers of metals being ejected from any apparatus," is too narrow a construction of this statute, and would, in many instances, defeat the beneficent object intended by the Legislature. Phillips v. Shoe Co., 178 Mo. App. 196, 165 S. W. 1183; American Ice Co. v. Porreca, 213 Fed. 185, 129 C. C. A. 529; Freedom Casket Co. v. McManus, 218 Fed. 323, 134 C. C. A. 119; U. S. Gypsum Co. v. Karnaca, 216 Fed. 857, 133 C. C. A. 61 (decided by this court); McCarney v. Bettendorf, 156 Iowa, 418, 136 N. W. 920; U. S. Cement Co. v. Cooper, 172 Ind. 599, 88 N. E. 69.

Counsel for defendant relies on Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810, Deiner v. Sutermeister, 266 Mo. 505, 178 S. W. 757, and Strode v. Columbia Box Co., 250 Mo. 695, 158 S. W. 22. These cases, it is claimed, construe this statute as inapplicable to the facts in the instant case. But in our opinion they are clearly inapplicable on the facts. In the Simpson Case the employé, while walking, stumbled over a stationary belt. The court held that, even if the belt had been guarded, it would not have prevented the accident. There are some expressions in the opinion which, when applied to a different state of facts, are misleading. In the Deiner Case the action was founded on a statute requiring scaffolds and other structures used in the erection of a building to be safely and securely supported and of sufficient width to be safe for employés walking upon them, and it

was held that it did not apply to hoists; the court applying the maxim ejusdem generis. In the Columbia Box Company Case the injury was caused by the breaking of a belt 14 feet above the floor, and the court held that the statute did not apply to breaks or explosions, which are liable to give way from the strains incident to their movement. We are of the opinion that, upon the facts established, this pot or kettle was within the meaning of the statute "machinery," and was required to be guarded if possible.

[6-8] Was it possible to guard it? "Possible," as used in the statute, evidently was intended to mean practicable, and should be so construed. Both sides introduced the testimony of experts, and, as is always the case where such testimony is introduced, it was conflicting. While the testimony of experts is not conclusive on a jury, which is the final judge to determine the facts, it is proper to introduce it, and should be considered by the jury. The finding of a jury upon such conflicting evidence, and using its own judgment, is conclusive, and will not be disturbed by the appellate court. There was substantial evidence to establish the practicability of guarding the kettle.

The question of contributory negligence was fairly submitted to the jury, and its finding, there being substantial evidence to warrant it, is final.

There were a number of special instructions asked on behalf of the defendant, which were refused by the court, and proper exceptions saved. A number of them are in relation to the construction of the statute; it being claimed that under this statute there is no liability. In view of what has been said, these instructions were properly refused.

[9, 10] There were some other instructions asked, but they were either fully covered by the charge of the court, or they were clearly erroneous—some abstract, without any evidence to support them. They have been fully considered by us, and we fail to discover that the court committed any error in refusing them.

[11] The contention that the verdict of the jury is excessive cannot be considered by this court, as it is the well-settled rule of the national courts that the verdict of the jury assessing damages in an action to recover damages for a personal injury is conclusive. St. Louis & Iron Mountain Ry. Co. v. Craft, 237 U. S. 648, 661, 35 Sup. Ct. 704, 59 L. Ed. 1160; Railroad Co. v. Fraloff, 100 U. S. 24, 31, 25 L. Ed. 531.

The judgment is affirmed.

HOOK, Circuit Judge (dissenting). The controlling question in this case is whether a pot or kettle jacketed in brick and holding molten metal is within section 7828, Rev. Stat. Mo. 1909, which requires the guarding of "belting, shafting, machines, machinery, gearing, and drums" in factories. More narrowly it is whether the pot is a "machine" or "machinery," as those terms are employed in the Missouri statute.

The apparatus was used for galvanizing sheet iron. Slabs of zinc were reduced to a molten state in the pot by a fire beneath. The supply of the molten mass was maintained by adding slabs as required. Moisture on or in a slab, when put in, would cause an eruption or ex-

plosion of the liquid metal, and plaintiff, who was doing that work, was injured on such an occasion. Formerly the galvanizing was done by immersing the sheets of iron by hand; but at the time of the accident detachable rollers and chains operated by power were fastened to the pot to conduct the operation.

My Associates decline to consider whether the pot of molten metal by itself would be within the statute, but they hold that it became so because of the mechanical attachment. In other words, they are of the opinion that "the melting pot was a part of the machinery used for the purpose of galvanizing sheet iron"; and this, though two things are clear in the record: First, it was not shown and did not appear that the attached machinery was in operation at the time of the accident; and, second, no one contends that the attached machinery had the remotest bearing on the accident. It would have happened just the same, had the rollers and chains been lifted out and put aside. This casual, irrelevant circumstance is held to impart a definite character to the pot that must otherwise, at least, be doubtful. Equally would the attachment of a power wringer to a washtub filled with suds make the tub of suds machinery within the Missouri statute, though the wringer was idle. The wide scope of this conclusion of my Associates is shown by some of the decisions cited to support it. Commonwealth v. Lowell Gaslight Co., 12 Allen (94 Mass.) 75; Wreggitt v. Barnett, 99 Mich. 477, 58 N. W. 467; East Tenn., etc., R. Co. v. Thompson, 94 Ala. 636, 10 South. 280. In the Massachusetts case it was held that mains, service pipes, and meters of a gas company were machinery, within the meaning of a tax law requiring the deduction of the value of "real estate and machinery." The Michigan case was an action for damages for the removal of a shingle mill outfit "consisting of engine, boiler, belts, saws, pulleys and other machinery." The plaintiff averred "that defendant removed said machinery." The court said: "We think it would be overtechnical to say that a smokestack was not included." In the Alabama case it was held that the supply pipe of a water tank was "a part of the ways, works, machinery, or plant connected with or used in the business of a railroad company," within the meaning of a civil damage statute.

Statutes of the kind before us should be ungrudgingly construed with liberality to accomplish their beneficent objects, but there are limits beyond which courts cannot go without indulging in legislation. No one could reasonably contend that a gas meter, a smokestack, or a water supply pipe was machinery within the Missouri statute, however they might be regarded in other relations or for other purposes. If it were otherwise, strange questions would arise over guarding them with protective devices. In Simpson v. Witte Iron Works, 249 Mo. 376, 155 S. W. 810, the plaintiff fell over a belt placed near the floor, while it was not running; but it was held that the case was not within the statute, although "belting" is one of the terms used. The court said that the statute contemplates the safeguarding of agencies of power and motion, and only when such agencies are in action. The construction is a reasonable one, and is of course binding upon us. A word or term may mean one thing in one place and quite a different thing in another

place; and when it appears in legislation due attention should be given to the purpose of the statute, as well as to the context in which it is found. Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226. The inquiry here is not whether the pot of metal was in a broad, comprehensive sense a part of the machinery of defendant's manufacturing plant, but whether in a much narrower sense it was, when considered by itself, machinery within the particular statute. The injury was caused by the melted zinc in the pot, not · by the mechanical attachment. The latter had nothing to do with it.

I cannot escape the conviction that a construction has been given the local law at variance with that settled by the highest judicial tribunal of the state.