RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Petitioner, v. TAX COURT OF PUERTO RICO, Respondent; CROWN BEVERAGES, INC., Intervener.

No. 126. Argued December 3, 1946.—Decided March 12, 1947.

Luis Negrón Fernández, Acting Attorney General, J. B. Fernández Badillo, Assistant Attorney General, and Manuel Ledesma Dávila, attorney of the Tax Division, etc., for petitioner. James R. Beverley, José López Baralt and R. Rodríguez Lebrón for intervener, complainant in the main proceedings.

MR. CHIEF JUSTICE TRAVIESO delivered the opinion of the Court.

Crown Beverages, Inc., a corporation engaged in the manufacture and bottling of soft drinks, since July 1, 1944, started to introduce into Puerto Rico parts and accessories which it alleges are essential and indispensable for the operation of its industrial plant. The Treasurer demanded from it the payment of excise taxes on said parts and accessories. The intervener made payment under protest and resorted to the Tax Court of Puerto Rico, alleging that the excises had been unlawfully collected from it inasmuch as the articles upon which said excise taxes had been levied were covered by the tax exemption provided by Act No. 77 of May 9, 1944 (Laws of 1944, p. 166); and that the parts and accessories upon which the Treasurer levied the taxes constitute apparatus and equipment which are essential for the operation of its industrial plant. The intervener prayed for the return by the Treasurer of the excises paid under protest, plus interest at the legal rate, costs, and attorney's fees.

The Treasurer in his answer admitted that the parts and accessories involved were essential for the operation of intervener's industrial plant but denied that they were exempt from the payment of excises under the provisions of Act No. 77 of May 9, 1944. The Treasurer has construed said Act in the sense of not exempting from the payment of excises the pieces and spare parts when they are introduced or obtained separately from the main equipment. Such a construction is set forth in the Regulations for Industrial Exemption promulgated by the Treasurer of Puerto Rico on August 22, 1944, pursuant to Act No. 77 of May 9, 1944, Regulation No. 52, § 2, Article 4(e).

Upon the case being submitted to the Tax Court of Puerto Rico, the latter decided that, as the Treasurer had admitted in his answer to the original complaint and the supplementary pleadings that said parts and accessories were essential for

the operation of intervener's industrial plant, they are exempt from the payment of excises under Act No. 77 of May 9, 1944; and it ordered the Treasurer to reimburse to the complainant the excises paid under protest, plus interest at the rate of 6 per cent per annum.

The Treasurer assigns several errors which, in his opinion, were committed by the Tax Court. We will discuss them jointly, as we consider that the only question involved in this case is the determination of whether the parts and accessories herein are covered by Act No. 77 of May 9, 1944, and are therefore exempt from the excises levied upon them.

 Act No. 77 of May 9, 1944, reads thus:

"Section 16.—B.—There shall be exempt from the payment of the excises imposed by this Act all machinery, apparatus, or equipment that may be essential for the establishment and operation of industrial plants; *Provided,* That the Treasurer of Puerto Rico shall prescribe the regulations that may be necessary in order to enforce the provisions of this section."

And the Regulations for Industrial Exemption, promulgated by the Treasurer of Puerto Rico on August 22, 1944, in accordance with Act No. 77 of May 9, 1944, Regulation No. 52, § 2, Article 4(e), provide as follows:

"Machinery, apparatus or equipment:

The scope of the exemption does not cover the parts, pieces, and accessories of the industrial machinery, apparatus, or equipment when they are imported or obtained in the local market separately from the main equipment of which they shall eventually form part or aid in their operation. Nor does it cover the machinery, apparatus or equipment when the same constitutes 'raw material' in those types of industries described in Article 4(a)."

When the Legislature passes an Act it necessarily has a specific intention in regard to all the cases which may subsequently arise under the statute. The problem is merely to determine the legislative intent, and this may be done by considering the purpose or motive which the Legislature had for passing said Act.

It is a matter of common knowledge that the economic situation and the social conditions prevailing in this island, caused by the density of our population and the lack of industries in which our working class may find employment, could only be remedied through the establishment of new industries. With the evident purpose of attracting capital, domestic as well as foreign, and of encouraging its investment in the establishment and operation of industrial plants in this island, the Legislature of Puerto Rico, since 1919, has adopted the policy of exempting particular industries from the payment of taxes and excises, thus contributing in a practical way to the promotion and development of insular industrialization.

We have before us another tax-exempting statute, Act No. 77 of 1944. This Act exempts from the payment of excises 'all machinery, apparatus or equipment that may be essential for the establishment and operation of industrial plants.'' It also seeks the purpose of stimulating and promoting the establishment of industrial plants in Puerto Rico. The legislative intent appears from the clear language of the statute. It can be no other than to free as much as possible the industrial plants from tax burdens, so as to attract the greatest number of such plants to our island. The lawmaker has not confined himself to promoting the establishment of these industrial plants. He has gone further, and has extended his protection to the operation of such plants in order that they may operate uninterruptedly, having spare parts and accessories.

The Act specifically enumerates all *machinery, apparatus, or equipment* essential for the establishment and operation of industrial plants. It should be noted that the Act uses the word "machinery" instead of the term "machine." The word "machinery," as it is commonly and ordinarily used, has a more ample application and its meaning has a greater and wider scope than that of the term "machine." In *Benedict* v. *City of New Orleans,* 11 So. 41, it was held that:

" 'Machinery' is defined as parts of a machine considered collectively; also as the combination of mechanical means to a given end, such as the machinery of a locomotive, or of a canal lock, or of a watch. 'Machinery' comprises different mechanical appliances, and is more extensive in meaning than 'machine.' "

In *Shalen et al.* v. *Central Coal & Coke Co.*, 192 S.W. 225, it was said:

"It appears, however, that the word 'machinery' is a more comprehensive one than the word 'machine,' and includes appurtenances necessary to the working of a machine."

Other cases to the same effect are *Doty* v. *Oriental Print Works Co.*, 67 A. 586 and *National Enameling & Stamping Co.* v. *Zirkovics*, 251 Fed. 184.

It is clear that the lawmaker in referring to "all machinery" essential for the establishment and operation of industrial plants intended to include, not only the machines proper, but also the spare parts, pieces, and accessories thereof, which constitute "machinery." If the Legislature had intended to limit the application of the exemption to machines only, it could have easily done so, by clearly stating that the exemption was granted with regard to "all machines" and not with regard to "all machinery," which is the term used by the statute under consideration. We think that the spare parts, pieces, and accessories of industrial plants constitute "machinery," although said parts are separate or may have been obtained apart from the principal machine.

In addition to "machinery," the statute uses the terms "apparatus" or "equipment." In 3 Corpus Juris, p. 252, "apparatus" is defined thus:

"A generic word of the most comprehensive signification; implements; an equipment of things provided and adapted as a means to some end; any complex instrument or appliance for a specific action or operation, of which mechanical or chemical instruments are given as examples; . . . "

The Century Dictionary and Cyclopedia, vol. I, defines "apparatus" as follows:

"An equipment of things provided and adapted as means to some end; especially, a collection, combination, or set of machinery, tools, instruments, utensils, appliances, or materials intended, adapted, and necessary for the accomplishment of some purpose, such as mechanical work, experimenting, etc. . . ."

If, according to the definitions above set forth, the term "apparatus" covers every collection, combination of machinery, tools, instruments, utensils, accessories or materials used, adapted, and necessary for the accomplishment of some purpose, such as the operation of intervener's industrial plant, it must be concluded that the parts and accesories in controversy should also be included within the term "apparatus" and hence exempt from the payment of the excises levied by the Treasurer.

Lastly, we will consider the most important of the three terms covered by the statute, which is the word "equipment." In the case of *Landau* v. *Sykes,* 54 So. 3, where a corporation had executed a mortgage upon all its buildings, structures, improvements, machinery, etc., stating that it was its intention to include all the property of every description owned by the corporation which constituted part of its "plant and equipment," the term "equipment" was construed thus:

"The word 'equip' means 'to furnish for service, or against a need of exigency; to fit out; to supply with whatever is necessary to efficient action in any way.' And the word 'equipment' means 'whatever is used in equipping; . . . the collective designation for the articles comprising an outfit."

The court in deciding that case said:

"The establishment which the company maintained for conducting the business in which it is engaged was equipped, not only with the machinery necessary for the manufacture of oil and ice and for the ginning of cotton, but with such office furniture as would enable it to conveniently keep a record of the various transactions. Books must be kept, letters written, and numerous other things done in

connection with such a business, which could only be conveniently done by the maintenance of an office equipped with the necessary furniture. The articles in question, therefore, constitute a part of the company's equipment.''

The word ''equipment'' has a very broad meaning, which covers not only the machine proper but also a number of other things useful for the operation of the plant. Equipment means that which is essential; that which is neccessary. *Eastern Pennsylvania Power Co.* v. *State Board of Taxes and Assessments,* 126 A. 216. In *Old Colony Ins. Co.* v. *Kolmer,* 136 N.E. 51, where a policy insured an automobile against loss by theft on its machinery or equipment, it was held that it covered the theft of a rectifier used in charging batteries of automobiles with electric current, and that the word ''equipment'' meant whatever is needed for the operation and rendering of an efficient service. In said case the rectifier was not constantly carried in the automobile but belonged to a garage, and was obtained, as alleged by the appellant, separately from the automobile. Referring to this particular the court said:

''It is obvious that an appliance need not be attached to or carried on or in an automobile, to be a part of its equipment. . . .

''Most owners of automobiles carry an emergency jack, when on the road, for use in the event of deflated casings. This is certainly a part of the equipment of the automobile. Some owners also have other jacks, which they keep in their garages, with which to raise and support their automobiles from the floor, when left standing for a considerable time. Can it be said with reason that the former is an equipment, while the latter are not, merely because one is carried with the automobile, while the others remain in the garage? . . . We are of the opinion that it cannot be done, as to do so would give too much importance to a comparatively immaterial fact.

''. . . We attach no importance to the fact that the rectifier was not purchased with the automobile, as a part of its equipment, as an appliance acquired subsequently, if of such a character and so used as to constitute an equipment, would be such notwithstanding that fact.''

Even if we should concede that the words "machinery" and "apparatus" have no such broad meaning as to cover the parts and accessories involved herein, we must conclude that the term "equipment" used in the statute covers them and that, therefore, they are exempt from the excises. We consider that the parts and accessories are essential for the establishment and operation of intervener's industrial plant, since such fact clearly appears from the pleadings.

■ The doctrine that tax exemptions should be strictly construed and that they are not presumed but must be stated in clear and precise language, is not applicable where, as in the instant case, the legislative intent and purpose are clear and unequivocal. In *Krause* v. *Peoria Housing Authority,* 19 N.E. (2d) 193, 370 Ill. 356, the court said:

"While it is true that tax-exemption statutes are construed most strongly against the exemption, nevertheless, if a clear intention to exempt certain property appears, it must be given effect."

And in Mertens, Law of Federal Income Taxation, vol. I, p. 57, it is stated:

"It is important to remember, at the outset, that rules of construction are aids in the search for legislative intent. Obviously, therefore, rules have no function where there is no ambiguity. Where the meaning is clear, the statute must be enforced as written."

■ In concluding the analysis of the statute, we think that the construction given by the Treasurer and contained in Article 4(e) of the Regulations, *supra,* is void, since it is in conflict with Act No. 77 of May 9, 1944. As we have already stated, the parts and accessories in question are exempt from the payment of excises, and the Treasurer of Puerto Rico can not promulgate a regulation which imposes taxes upon things which have been exempted by law. We consider as applicable herein the rule laid down by the Federal Supreme Court, thus:

"The power of an admnistrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is

not the power to make law—for no such power can be delegated by Congress—but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. . . . And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. . . .

". . . The statute defines the rights of the taxpayer and fixes a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute." *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129.

In *Ex parte Irizarry*, case No. 441, 66 P.R.R. 634, it was said:

"It is an elementary rule of law that when the legislature delegates to a board or person powers to promulgate rules, the latter, to be valid, cannot be in conflict with the norms established in the law. *People* v. *Bou*, 64 P.R.R. 445; *Alemañy* v. *Industrial Commission*, 64 P.R.R. 845, and cases cited therein; *Villa* v. *Industrial Commission*, 65 P.R.R. 527. The purpose in delegating the power of promulgating rules was no other than to carry out the execution of the law, but this power may never be exercised in such a manner as to cause the intention of the legislator to be substituted by that of the board or person authorized to make the regulations."

The decision appealed from should be affirmed.

Mr. Justice Snyder did not participate herein.